FREDERICK BURGER *vs.* MAX GREIF. ALEXANDER Y.
DOLFIELD AND FREDERICK C. COOK, Trustee *vs.*
MAX GREIF.

*Marshalling of Securities—Right of Mortgagor to sell any of*
*the Parcels of Real Estate aliened subject to a Mortgage—*
*Contribution when Mortgage Debt paid by One of the Pur-*
*chasers of the Parcels.*

On the 15th December, 1874, C. L. H. and others conveyed to J. F.
two leasehold lots in Baltimore City. On the same day J. F. mort-
gage both lots to C. L. H. to secure $2000. On the 28th December,
1874, J. F. sub-leased a part of the second lot to F. B. On the 14th
September, 1876, J. F. assigned all his interest in both lots to G.,
subject to the mortgage for $2000, and another mortgage of even
date given by J. F. to a building association. On the 24th April,
1878, G. mortgaged the first lot to M. G. and L. G. to secure $1500.
On the 5th November, 1878, G. assigned all his interest in both
lots to B. F., subject to the mortgage for $2000. The mortgage to
M. G. and L. G. was foreclosed, M. G. became the purchaser at
$1150, and a deed for that lot was executed to him, on the 29th
January, 1879, by the trustee who made the sale. At the time of
sale, the trustee stated, that the lot was sold subject to the effect
and operation of a first mortgage for $2000. It was afterwards shown
that this lot was worth from $3000 to $3500. On the 10th February,
1879, C. L. H. assigned his mortgage on both lots and the mortgage
note to D. On the 11th February, 1879, B. F. conveyed the second lot
to F. B. On the 7th March, 1879, D. obtained a decree for the sale
of all the mortgaged property described in the mortgage to C. L. H.,
and a trustee was appointed to make the sale. After the property
was advertised, M. G. offered to pay the mortgage debt if D.
would assign the mortgage for $2000 to him. This offer D. and the
trustee declined. On the 15th March, 1879, M. G. filed his bill against
D., F. B. and the trustee, charging among other things, that he
was entitled to an assignment of the mortgage and decree after
paying the mortgage debt, and praying that if sold, the lots should
be sold in the order designated in his bill, and that the sale of the
property of M. G. under D's decree should be enjoined until a sale
of the other parts of said property should have first been made

Burger *vs.* Greif. Dolfield and Cook, Trustee *vs.* Greif.

The Court ordered the two cases to be consolidated, and that, on payment into Court of the mortgage debt, interest and costs, the trustee be enjoined from making sale of the property. In this pro ceeding it was HELD:

1st. That all the purchasers of the two lots having bought subject to the mortgage for $2000, and the obligation of each to pay the mort gage forming part of the consideration of his purchase, they all stood upon equal footing and the mortgagee's assignee D. had the right to sell any part he might think proper for the payment of his debt; and that the party whose property might be sold, had a right to a proceeding to compel contribution from the other purchasers.

2nd. That M. G. had no right to an assignment of the mortgage and decree, on payment of the mortgage debt, interest and costs; but that such payment would entitle him to have contribution from the other parties, who had bought parts of the mortgaged premises·

APPEALS from the Circuit Court of Baltimore City. ·

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*F. C. Cook* and *O. F. Bump*, for the appellants.

This case arises under the law in regard to the order of sale under a lien where there have been subsequent alienations. The principles of that law will be readily seen upon examining the facts of *Gill vs. Lyon*, 1 *Johns. Ch.*, 447. See *Hartley vs. Flaherty, Lloyd & Gooldtemp Plunket*, 208; *Welch vs. Beers*, 8 *Allen*, 151.

It is manifest that the right to a particular order of sale arises from the obligation which the law implies, from the particular transaction. It is a mere equitable right, founded upon general justice, and governed by equitable principles. It depends upon the circumstances of each particular case, for there is no inflexible rule which a party has the right to invoke without regard to the

Burger *vs.* Greif. Dolfield and Cook, Trustee *vs.* Greif.

equities of others. *Blair vs. Ward,* 10 *N. J. Eq.,* 119; *Patty vs. Pease,* 8 *Paige,* 277; *Guion vs. Knapp,* 6 *Paige,* 35; *Cowden's Estate,* 1 *Penn.,* 267.

A prior lien from its very nature binds every part of the land subject to it, and each part thereof equally. When the parties are in *equali jure,* they must contribute proportionately to discharge it, for equality is equity. *Harbert's Case,* 3 *Co.,* 11 *b; Hoy vs. Bramhall,* 19 *N. J. Eq.,* 563; *Dickey vs. Thompson,* 8 *B. Mon.,* 312; *Allen vs. Clark,* 17 *Pick.,* 74; *Ruddick vs. Bates,* 2 *Iowa,* 423; *Parkman vs. Welch,* 19 *Pick.,* 231.

From this it follows that he who seeks to escape from his share of the common burden, must show the ground of his equity.

There are four well recognized instances where the first purchaser is not entitled to have the property sold in the inverse order of alienation:

Where the first purchaser as a part of the contract agrees to pay off the prior lien. *Welch vs. Beers,* 8 *Allen,* 151; *Mason vs. Payne, Walk. Ch.,* 459; *Day vs. Patterson,* 18 *Ind.,* 114; *Black vs. Morse,* 7 *N. J. Eq.,* 509; *Caruthers vs. Hall,* 10 *Mich.,* 40; *Mevey's Appeal,* 4 *Penn.,* 80; *Pool vs. Marshall,* 48 *Ill.,* 440.

Where the first purchaser as a part of the contract of purchase agrees to pay a certain amount of the prior liens. *Engle vs. Haines,* 5 *N. J. Eq.,* 186, *S. C.,* 632; *N. Y. Life Ins. & T. Co. vs. Milnor,* 1 *Barb. Ch.,* 353; *Torrey vs. Bank,* 9 *Paige,* 649; *Cissna vs. Haines,* 18 *Ind.,* 496; *McCullum vs. Turpie,* 32 *Ind.,* 146; *Warren vs. Boynton,* 2 *Barb.,* 13.

Where the first purchaser does not pay full value, but buys merely subject to the liens without specifying the amount he is to pay. *Hoy vs. Bramhall,* 19 *N. J. Eq.,* 74, 563; *Stillman vs. Stillman,* 21 *N. J. Eq.,* 126; *Briscoe vs. Power,* 47 *Ill.,* 447.

Where the first purchaser has not paid the full amount of the purchase money, but a balance remains unpaid.

*Crafts vs. Aspinwall,* 2 *N. Y.,* 289; *Allen vs. Clark,* 17 *Pick.,* 47; *Selle vs. Andrews,* 19 *N. J. Eq.,* 409.

The first mortgage was given by John Faulstich; the second by John Gebhard. There is no common debtor. But inasmuch as the equity arises from the obligation raised by the law from the transaction, cases of this kind constitute an exception to the rule that the assets cannot be marshalled unless there is a common debtor. *Guion vs. Knapp,* 6 *Paige,* 35; *N. Y. Life Ins. Co. vs. Milnor,* 1 *Barb. Ch.,* 353; *Wiekoff vs. Davis,* 4 *N. J. Eq.,* 224; *Shannon vs, Marselis,* 1 *N. J. Eq.,* 413; *Moore vs. Chandler,* 59 *Ill.,* 466.

There is a distinction between an absolute conveyance and a mortgage. In the case of a purchaser, the obligation arises from the payment of full value and is therefore an obligation to protect the lot. But in the case of a mortgage, the obligation arises from the receipt of the loan and is merely an obligation to protect the loan. It arises out of the promise to repay the loan. A mortgagee therefore can never invoke the doctrine of a sale in the inverse order of alienation. The lot must be sold, his money deducted from the proceeds, and the balance applied to pay the prior liens, before a lot subsequently aliened can be sold. *Kellogg vs. Rand,* 11 *Paige,* 59; *La Farge Fire Ins. Co. vs. Bell,* 22 *Barb.,* 54; *Pike vs. Goodman,* 12 *Allen,* 472.

The holder of the second mortgage has the right to file a bill to foreclose his mortgage, making the mortgagor and the holder of the prior liens parties. In such case his equity would be protected, and the purchaser would get a clear title. *Henshaw vs. Wells,* 9 *Humph.,* 568; *Wylie vs. McMakin,* 2 *Md. Ch.,* 413.

But in this case the second mortgagee sold merely under his own mortgage. The question thus arises whether his equity passes to the purchaser. It is manifest from the nature of the equity that it does not. The

equity is a mere incident to the promise to repay the money, is inseparable from that promise, and does not pass to the purchaser. The purchaser merely buys the interest of the mortgagor in the lot; he does not buy the mortgage debt nor any incident thereof. In this branch of the law it is settled that the rights of parties may be changed by a change of circumstances; thus, if a junior incumbrancer waits until the lot, subject to his incumbrance, has been sold under a prior lien, he has no claim for contribution against any one. *Bains vs. Williams*, 18 *Miss.*, 113; *McGinnis' Appeal*, 16 *Penn.*, 445.

If a party at a judicial sale buys a lot that is subject to a prior mortgage, the legal presumption is that he only bids the value of the equity of redemption. *McKinstry vs. Curtis*, 10 *Paige*, 503; *Hardy vs. Smith*, 41 *Md.*, 1.

He therefore stands in the position of a purchaser who buys subject to the incumbrance without specifying the amount and must therefore contribute proportionately to discharge the prior lien. *Carpenter vs. Koons*, 20 *Penn.*, 222; *Mev'y's Appeal*, 4 *Penn.*, 80; *Dodds vs. Snyder*, 44 *Ill.*, 53; *Weaver vs. Toogood*, 1 *Barb.*, 238.

When property is bought subject to a mortgage, it becomes the primary fund for the payment of the debt, and the purchaser *quoad* the property becomes the principal debtor, and the mortgagor becomes a mere surety. *Johnson vs. Zink*, 51 *N. Y.*, 333; *Harris vs. Jex*, 66 *Barb.*, 232.

A purchaser is not entitled to an assignment of the mortgage; his remedy is to pay the debt and then file a bill for contribution. 1 *Jones on Mortgages, sec.* 792; *Matteson vs. Thomas*, 41 *Ill.*, 110; *Ellsworth vs. Lockwood*, 42 *N. Y.*, 89; *Lamb vs. Montague*, 112 *Mass.*, 352; *House vs. Thompson*, 3 *Head*, 512.

*M. S. Weil* and *J. J. Alexander*, for the appellee.

The doctrine of marshalling of securities is well settled. See *Leib vs. Stribling, Adm'x*, 51 *Md.*, 285; *Aldrich vs.*

Burger *vs.* Greif.   Dolfield and Cook, Trustee *vs.* Greif.

*Cooper,* 8 *Ves.,* 395; *Watkins vs. Worthington,* 2 *Bland,* 532; *Johns vs. Reardon,* 11 *Md.,* 470; *Watson vs. Bane,* 7 *Md.,* 128; *Durham vs. Rhodes,* 23 *Md.,* 243; *Schnebly vs. Ragan,* 7 *G. & J.,* 126; *Hamilton vs. Schwehr,* 34 *Md.,* 118; 1 *Story Eq. Jur.,* secs. 633 *to* 645.

The bill is not multifarious. The case of *Dolfield vs. Faulstich* is an *ex parte* proceeding, and Greif could by no device have made Burger a party thereto; and as the *gravamen* of his complaint was fraud and conspiracy between Dolfield and Burger and Cook, they were all neces·sary parties thereto. *Wilson vs. Wilson,* 23 *Md.,* 162; *Kunkel vs. Markell,* 26 *Md.,* 390; *Ashton vs. Ashton,* 35 *Md.,* 496; *Trego vs. Skinner,* 42 *Md.,* 426.

GRASON, J., delivered the opinion of the Court.

On the 15th of December, in the year 1874, Cornelia L. Henderson and others conveyed to John Faulstich two leasehold lots in Baltimore City, which are particularly described in their deed, and on the same day Faulstich executed a mortgage of the same lots to Cornelia L. Henderson to secure the payment of two thousand dollars. On the 28th of December, 1874, Faulstich sub-leased a part of these lots, which is described in the lease to Burger, it being part of the second lot conveyed by the Hendersons to Faulstich. On the 14th of September, 1876, Faulstich assigned all his interest in these lots to Gebhard, subject to the mortgage to Cornelia L. Henderson, as also to a mortgage which he had executed to the Broadway National Building Association, each dated the 15th December, 1874. On the 24th April, 1878, Gebhard mortgaged one of the lots designated as lot No. 1, to Max and Levi Greif, to secure the payment of fifteen hundred dollars. On the 5th November, 1878, Gebhard assigned all his interest in the lots to Bernard Funke, subject to the mortgage to Cornelia L. Henderson. A decree was afterwards obtained for the sale of the lot mortgaged by Gebhard to Max and

Levi Greif; the lot was sold to Max Greif for $1150, and a deed for that lot was afterwards, on the 29th January, 1879, executed to him by M. Starr Weil, the trustee, to make the sale.

On the 10th February, 1879, Cornelia L. Henderson, assigned her mortgage on both lots and the mortgage note to Alexander G. Dolfield, and on the following day, 11th February, 1879, Bernard Funke conveyed one of the lots, assigned to him ·by Gebhard, to Frederick Burger.

On the 7th March, 1879, Dolfield obtained a decree for the sale of all the mortgaged property described in the mortgage to Henderson, and Frederick C. Cook was appointed trustee to make the sale. On the 15th day of March, Max Greif, the appellee in this case, filed his bill against Dolfield, Burger and Cook, the trustee, in which, after setting forth the various conveyances of, and liens on the lots as hereinbefore stated, alleged that he had offered to pay the whole debt, secured by the Henderson mortgage, provided Cook, the trustee, would assign said mortgage to him, but that said offer had been refused by Cook, the trustee, and Dolfield. It further charged that Dolfield and Burger had combined and confederated for the purpose of relieving Burger's portion of said lots from the effect of the mortgage and threatened to first sell the lot of Max Greif, which, he alleged, was of greater value than the amount of the whole mortgage debt, interests and costs. It further charged that the complainant was entitled to pay off the whole mortgage debt, interest and costs, and have the mortgage and decree assigned to him so as to protect himself and his property from sale, and so that he could have the other lots sold ''in the order in which, according to the rules of equity, said property should be sold for the satisfaction of said mortgage claim, interests and costs,'' and it is claimed that lot No. 2, described in the bill as No. 4, shall be first sold, and secondly, the reversion of the sub-lease in that portion of lot

No. 2, which is described as lot No. 3 in the bill, subject to the interest of the sub-lease thereon, and that, if there should not be realized from such sales, an amount sufficient to pay the mortgage debt, interest and costs, then the complainant should hold his property discharged from the effect and operation of the mortgage. An injunction was also prayed, restraining a sale of the property of the complainant under Dolfield's decree, until a sale of the other parts of said lots should have first been made. The Circuit Court passed an order on the first day of April, 1879, consolidating the two cases, and ordering that on payment into Court of the mortgage debt, interest and costs, the trustee, Cook. be enjoined from making sale of the property as directed by the decree of March 7, 1879. Answers were filed, evidence was taken, and upon final hearing the Circuit Court, on the 8th January, 1880, passed a decree directing lot No. 4, mentioned in the bill, to be first sold by Cook, trustee, and if the proceeds of that sale should prove insufficient to satisfy the mortgage debt, interest and costs, that the reversion of the sub-lease in the lot mentioned as lot No. 3, should be sold, and if the proceeds of these two sales should prove insufficient for the purpose, that then the complainant should have the right to pay the difference in discharge of his lot No. 1, from the mortgage debt. The decree further directed the sum of money paid into Court, being the amount of the mortgage debt, &c., be repaid to Max Greif, the complainant. From this decree these appeals have been taken, and the question presented is, whether or not the lots in question should be sold in the order directed by that decree.

The rule is too well settled to need the citation of authorities in its support, that where one person has a lien upon two funds, or two pieces of property, and another holds a lien upon but one of those funds or pieces of property, that the first lienor will be compelled, in equity, to seek satisfaction of his claim from that fund or piece of

property which is not covered by the lien of the second lienor, before resorting to the fund or property which is covered by the second lien. This rule has been adopted and enforced so as, if possible, to enable all the lienors to receive payment of their claims, it being deemed inequitable that the first lienor should exhaust the fund or property to which alone the second lienor could look for payment, while he had another fund or property from which his claim could be, in whole or in part, satisfied.

There is another rule, which, we think, after a careful examination of the authorities, may be considered as settled—and that is, that where a party gives a mortgage upon his property, and afterwards conveys his equity of redemption to different parties at different times, the property so conveyed is liable for the mortgage debt in the inverse order of its alienation; or, in other words, that the property last conveyed must be exhausted in payment of the mortgage debt before the mortgagee can resort to that which was conveyed before it in point of time. While the decisions in some few of the States hold that the mortgaged property is equally bound in the hands of all parties to whom it may have been conveyed. The great weight of authority is in support of the rule we have stated. The decree of the Court below is based upon the latter rule, and the question is, whether the facts in the case now before us bring it within that rule.

It will be borne in mind that, after the deed of assignment of both the lots by Faulstich to Gebhard, that the latter mortgaged lot No. 1 to Max and Levi Greif on the 24th April, 1878, subject to the Henderson mortgage in common with lot No. 2. This mortgage was to secure the payment of the sum of fifteen hundred dollars. Gebhard then assigned all his interest in both lots to Bernard Funke after proceedings had been commenced by Max and Levi Greif to foreclose their mortgage. The appellee, Max Greif, became the purchaser of lot No. 1 at the trus-

tee's sale, which was made *subject to the operation of the mortgage to Cornelia L. Henderson.* The price he paid for it was eleven hundred and fifty dollars, when the proof shows that the lot was worth from three thousand to three thousand five hundred dollars. It is evident, therefore, that he was enabled to purchase at the price named solely because this lot, in common with the rest of the land, was subject to the lien of the Henderson mortgage, which fact was announced and made known to the persons who attended the sale. Where a party purchases at a judicial sale, subject to a prior mortgage, it is to be presumed that he bids no more than the value of the equity of redemption. The appellee, having purchased at the trustee's sale, subject to the operation of the Henderson mortgage, would be bound equally with the other purchasers to pay his portion of the mortgage debt in proportion to the value of his lot, had it not been for the fact that the deed of assignment, executed by Gebhard to Funke, in express terms, charged the payment of the Henderson mortgage on the two lots so assigned to Funke, the consideration for the assignment being the sum of sixty dollars and " the payment of the mortgage hereinafter referred to," it being the Henderson mortgage. One of the exceptions to the rule we have referred to is, that where the mortgagor sells part of the mortgaged land, and by the deed charges the payment of the mortgage debt on the land so conveyed, the land so charged must be exhausted in satisfaction of the debt before any other parts of the mortgaged lands can be resorted to for payment, whether they remain in the hands of the mortgagor, himself, or have been conveyed to other parties. *Welch vs. Beers,* 8 *Allen,* 152; *Caruthers vs. Hall,* 10 *Mich.,* 40. After the deed of assignment to Funke, the appellee purchased lot No. 1 at trustee's sale, subject to the Henderson mortgage, and took his title subject to the charge, in common with lot No. 2 in Funke's hands, to pay the

Burger *vs.* Greif.   Dolfield and Cook, Trustee *vs.* Greif.

Henderson mortgage—each lot being liable for its proportion of the debt in proportion to its value at the time of its sale.   But there is still another exception to the rule that property sold by a mortgagor must be resorted to for payment of the mortgage debt in the inverse order of its alienation, and that is where full value has not been paid for the land, but it has been sold *subject to the mortgage;* and the purchaser's liability to pay his proportion of the debt forms part of the consideration of his purchase. This principle is sustained by the cases referred to on this point in the appellants' brief, to one of which only do we deem it necessary to refer, as announcing the only just and equitable rule in such cases.   In *Carpenter vs. Koons,* 20 *Pa. State Reps.,* 226, 227, BLACK, C. J., in delivering the opinion of the Supreme Court, says : " A man who purchases part of a tract covered by a mortgage, buying the title out and out, clear of incumbrances, and paying a full price for it, has a clear right to insist that his vendor shall allow the remainder of the mortgaged premises to be taken in satisfaction of the mortgage debt before the part sold is resorted to.   This being the right of the vendee against the mortgagor himself, the latter cannot put the former in a worse condition by selling the remainder of the land to another person.   The second purchaser sits in the seat of his grantor, and must pay the whole value of what he bought towards the extinguishment of the mortgage before he can call on the first purchaser to pay anything.   The first sale having thrown the whole burden on the part reserved, it cannot be thrown back again by the second sale.   In other words, the second purchaser takes the land he buys subject to all the liabilities under which the grantor held it.   But if the rule is to cease when the reason of it ceases, it cannot extend to a case where the first sale was made *subject to a mortgage,* and that is the condition of the present one." Where all the purchasers from a mortgagor have bought

subject to a mortgage, the obligation of each to pay the mortgage forming part of the consideration of his purchase, they all stand upon equal footing, and the mortgagee has the right to sell any part he may think proper for the payment of his debt, and the only remedy the party whose land is sold has, is a proceeding to compel contribution from the other purchasers.

There was error, therefore, in the decree of the Circuit Court in restraining the sale of lot No. 1 by Cook, the trustee, and in directing a sale as prescribed by said decree.

It is alleged in the bill, and has been contended in argument, that there was a combination and confederation by and between Cook, trustee, and the other defendants, to fraudulently release Burger's property from the operation of the mortgage, and to have the appellee's lot sold first therefor.   We think the proof is not sufficient to sustain the charge; but even if it was, and it clearly appeared that Cook, trustee, and Dolfield, were endeavoring to sell the appellee's lot first, they were doing, as we have shown, what they had a right to do; nor can we see in what respect the appellee could have been injured thereby.

It was further contended that the appellee had the right to pay the debt, interest and costs, and thereupon to have the mortgage and decree assigned to him.   We do not agree to this view.   The appellee could have paid the amount due with the costs of the case, and such payment would have entitled him to have contribution from the other parties who had bought parts of the mortgaged premises.

For the reasons above assigned the decree appealed from will be reversed and the cause remanded for further proceedings, in accordance with the views expressed in this opinion.

*Decree reversed, and*
*cause remanded.*

(Decided 16th March, 1881.)