27 P. 879 
1 Colo.App. 94
 OLSON v. SCOTT et al. 
Court of Appeals of Colorado
October 12, 1891

 
 Appeal
 from district court, Arapahoe county; L.M. GODDARD, Judge.
 
 
 Suit by
 Peter Olson against G. Oskar Scott and others to set aside a
 conveyance on the ground of fraud and other relief. Decree
 for defendants. Plaintiff appeals. Affirmed.
 
 
 STATEMENT
 BY THE COURT. This suit originated in transactions between
 the parties concerning a certain tract of land, appellant
 being the owner [1 Colo.App. 95] of the farm. Scott, McCourt,
 and Wiswall, appellees, considering it desirable for
 subdivision as suburban property for residences, purchased it
 for that purpose, paying no money. The property was conveyed
 by appellant by warranty deed, a note made for the entire
 purchase, $16,000, and a trustdeed given upon the property to
 secure the payment. A written contract was made and executed
 by the parties explanatory of the transaction, which is as
 follows: "Witnesseth, that whereas, the said parties of
 the first part have this day purchased from the said Peter
 Olson certain real estate in the south 1/2 of the south-west
 [27 P. 880] 
 1/4 of section 33, township 4 south, of range 68 west; and
 the north 1/2 of the north-west 1/4 of section 4, in township
 5 south, of range 68 west, more particularly described in the
 warranty deed of even date herewith, given by said party of
 the second part to said parties of the first part; and
 whereas, said parties of the first part have platted said
 land and laid the same out into lots, blocks, streets, and
 alleys, as per a map of the same this day filed in the
 recorder's office of said Arapahoe county; and whereas,
 said parties of the first part have this day executed to said
 party of the second part a trust-deed on said property for
 the sum of sixteen thousand dollars, ($16,000;) and whereas,
 said parties of the first part are desirous of paying said
 $16,000 as soon and as rapidly as possible, and said parties
 of the first part are desirous of selling said property so
 platted as aforesaid, and putting the same on the market for
 sale: Now, therefore, in consideration of the premises, it is
 hereby agreed by and between the parties hereto that as
 rapidly as any of said property shall be sold by the parties
 of the first part said party of the second part shall cause
 to be made and executed by his trustee a release deed of
 trust for each and every parcel of said property so sold by
 said parties [1 Colo.App. 96] of the first part, releasing
 said property so sold as aforesaid from the effect of said
 trust-deed of said parties of the first part, made and
 executed as aforesaid, to said party of the second part,
 bearing even date herewith; and immediately on the sale of
 any of said property by said parties of the first part the
 selling price of the same shall be deposited to the credit of
 said party of the second part in the German National Bank of
 the city of Denver, until the amount received and deposited
 as aforesaid shall reach the sum of $16,000; and the sums so
 deposited as aforesaid in said bank shall be applied to the
 payment of the promissory note of even date herewith, for the
 sum of $16,000, made and delivered by said parties of the
 first part to said party of the second part, and secured as
 aforesaid by said deed of trust; and when said sum of $16,000
 shall have been deposited in said bank as aforesaid, said
 said party of the second part shall cause to be made by his
 trustee, and delivered to said parties of the first part, a
 release deed of trust of said property from said deed of
 trust given as aforesaid, and shall cancel and return to said
 parties of the first part said promissory note for $16,000.
 And it is further agreed by and between the parties hereto
 that when said $16,000 shall have been paid in full as
 aforesaid by said parties of the first part to said party of
 the second part, and a release deed of trust shall have been
 executed by said trustee of the party of the second part to
 said parties of the first part, releasing said lands from
 said trust-deed, and said party of the second part shall
 return to said parties of the first part said promissory note
 so canceled and returned as aforesaid, then said parties of
 the first part shall make and execute to said party of the
 second part a good and sufficient warranty deed for an
 undivided 1/4 interest in and to all of said real estate so
 platted as aforesaid remaining unsold at that time. And it is
 further agreed by and between the parties hereto that no part
 or parcel of said real estate shall be sold by said parties
 of the first part except the proceeds of such sale be
 deposited as aforesaid to the order and credit of the party
 of the second part in said German National Bank of [1
 Colo.App. 97] the city of Denver, state of Colorado, to be
 applied as aforesaid to the payment of the said promissory
 note."
 
 
 It is
 alleged in the complaint that soon after the date of the
 conveyance the land was subdivided into 880 lots, a park,
 called "Olson Park," of 40 acres, streets, alleys,
 etc.; that the town or subdivision was called
 "Sheridan," and a plat of the same recorded; that
 between the date of the contract and the 27th day of February
 appellees sold 115 lots for $4,558.75, leaving unsold 665
 lots and the park; that the lots remaining unsold were of
 equal average value with those sold, and of the aggregate
 value of $28,535, and that the park was worth $9,000; that
 the 115 lots sold were at the time of their respective sales
 released by the trustee by an agreement with appellant from
 the operation of the trust-deed; that the consideration for
 the lots sold (cash, and notes secured by trust-deed) was
 turned over to and accepted by appellant to be applied upon
 the note of appellees, that on the 27th day of February,
 1889, there was a balance due appellant of $11,441, and that
 on that date Scott, McCourt, and Wiswall fraudulently
 conveyed all the property remaining unsold to appellee,
 Leves, for the sum of $12,000, ($3,000 cash and two notes of
 $4,500 each,) due, respectively, in one and two years,
 secured by a deed of trust upon the property; that the cash,
 notes, and trust-deed were turned over to Hon. J.A. Cooper,
 trustee, and accepted by him in full payment of the balance
 due appellant, and the deed of trust released; that such
 release was obtained from the trustee by fraud, without
 compensation, and without the knowledge or consent of
 appellant; that on the 30th day of March, 1889, Leves
 conveyed the entire property by him purchased to a
 corporation called the "Denver Suburban Improvement
 Company," of which the appellees, Wiswall, Scott, and
 Leves were the only incorporators, and that the conveyance
 was made to cheat and defraud appellant out of his interest
 in the property as reserved to him in the written contract,
 praying that the release executed by Cooper as trustee be
 canceled; that the deed from Wiswall, Scott, McCourt, and [1
 Colo.App. 98] Leves be canceled; that appellees and the
 Denver Suburban Improvement Company be enjoined from
 disposing of or conveying any of the property; and for a
 judgment of $12,000 for the balance remaining unpaid from
 appellees, etc. Defendants answered, denying all the material
 allegations of fraud, conspiracy, etc., and aver that prior
 to the 27th day of February, 1889, they spent large sums of
 money in laying out, improving, and advertising the property,
 and in efforts to sell the same. That the 115 lots were all
 they succeeded in selling; admit that there was still due and
 owing to the appellant $11,441.25, which would
 [27 P. 881.] 
 be due and payable March 1st; aver that the sale to Leves was
 made in good faith, and for the largest amount obtainable,
 and that they were obliged to sell to protect themselves
 against sale under the trust-deed; aver that the appellant
 had full knowledge of the sale to Leves, and that the trustee
 was authorized to accept the notes and security and release
 the trust-deed. That by an agreement made between the parties
 the following order was executed to the trustee:
 "Denver, Colo., Feb. 18, 1889. Hon. J.A. Cooper--Dear
 Sir: You will please continue to release land in Sheridan
 subdivision as fast as the lots are sold, and receive cash
 and notes in payment for same, in accordance with agreements
 on deposit in German Bank. PETER OLSON. Please release S.E.
 Browne. February 27, 1889." That through such sale to
 Leves appellees' note was fully paid, and the further sum
 of $558.75. A replication was filed, putting in issue the
 averments in the answer. On March 1, 1890, a decree was
 entered, the court finding all the issues in favor of the
 appellees, but requiring them to pay to appellant the sum of
 $8,441.25, being the balance due him on the note for the
 purchase of the property, within 10 days, such payment to
 take the place of the Leves note, and requiring the trustee
 to release the property from the Leves trust-deed. [1
 Colo.App. 99] The only errors assigned are the following:
 "First. The court erred in excluding pertinent and legal
 testimony in behalf of the appellant; second, the court erred
 in admitting incompetent and irrelevant testimony in behalf
 of the appellees; third, the finding and judgment and decree
 of the said court is contrary to law; fourth, the evidence
 clearly shows that the last release made by the said trustee
 was void because beyond his power to make, in this: that the
 time of payment on the note of the appellees to the
 appellant, to the extent of $9,000, was extended for one and
 two years, without the knowledge or consent of the appellant,
 and without any consideration to him."
 
 
 Alvin
 Marsh and Browne & Putnam, for appellant.
 
 
 Stevens
 & Ward, for appellees.
 
 
 REED,
 J.
 
 
 The
 first and second of the supposed errors assigned may be
 disregarded. No serious error was committed by the court in
 omitting or rejecting evidence. It is true, the evidence was
 allowed a wide range, but it seemed necessary for a full and
 proper understanding of the case. There was considerable
 conflict in the testimony, but the preponderance appears to
 have been clearly with appellees, and is corroborated by
 circumstances and former course of dealing. It is
 affirmatively alleged in the complaint that the sale to Leves
 was collusive, fraudulent, and made with the intention to
 defraud and injure appellant, but the evidence signally fails
 to sustain the allegation. "It is equally a rule in
 courts of law and courts of equity that fraud is not to be
 presumed, but it must be established by proofs."
 University of Oxford Case, 10 Coke, 56; Story, Eq.Jur. Â§ 190.
 Circumstances of mere suspicion, leading to certain results,
 will not in either of these courts be deemed sufficient
 ground to establish fraud. Trenchard [1 Colo.App. 100] v.
 Wanley, 2 P.Wms. 166; Townsend v. Lowfield, 1 Ves.Sr. 35;
 Walker v. Symonds, 3 Swanst. 61. Courts of equity do not
 require positive proof of fraud. It may be inferred from or
 established by inferences from facts and circumstances. In
 this case the conveyance to Leves and by him to a
 corporation, of which he and others of appellees were the
 sole incorporators and stockholders, might upon its face be
 looked upon as colorable, collusive, and suspicious; but this
 was in sufficient. Had the fact been shown that the property
 was conveyed for an inadequate price, far below its value,
 that fact, in connection with the colorable transfers, would
 have gone far to establish fraud. Appellant failed to make
 such proof, while the evidence of appellees shows it was the
 utmost they could secure by strenuous efforts. Whether or not
 appellant was cognizant of and fully informed in regard to
 the substitution of the Leves notes having one and two years
 to run after the maturity of the other note in place of the
 balance remaining due on that, is a question upon which there
 is quite a conflict of testimony, but the testimony of
 appellees appears to be sustained not only by the former
 course of dealing, but by the written order of February 18,
 1889, under which was written: "Please release S.E.
 Browne. February 27, 1889." Gen. Browne having been at
 that time the attorney of appellant, and the date being that
 on which the substitution and release was made, the
 conviction is very strong that the matter was fully
 understood, and the allegation that the release was obtained
 from the trustee by the fraud of appellees is not sustained
 by the evidence, which would go far towards showing that if
 there was an error the trustee was misled by the request of
 counsel written under the order of appellant. If the
 substitution was unwarranted, and worked a wrong by
 postponing the time of payment one and two years, it was
 cured by the judgment and decree of the court, requiring the
 balance due to be paid in 10 days. We think the findings and
 decree of the court were warranted by the evidence, and that
 the judgment should be affirmed.