## CARY v. McINTYRE.

1. A condition of an accord agreement, like that of any other contract, may be waived by the parties thereto.
2. Where there is ample consideration for an agreement on both sides, and the party who does not sign it acts under it without objection, the agreement, when acted on, may become binding upon both parties, and the writing serve as evidence of the terms of the contract between them.

*Appeal from District Court of Gunnison County.*

THE facts are stated in the opinion.

Messrs. MILLS BROS., for appellant.

Mr. LEWIS BOISET, for appellee.

HELM, J. On the 30th day of October, 1880, Cary, who was defendant below, and McIntyre, who was plaintiff below, entered into a written contract, by the terms of which McIntyre was to furnish and deliver to Cary at Gunnison two hundred thousand feet of good and merchantable lumber, of such kinds as Cary wanted, and two hundred thousand shingles. He was also given the privilege of delivering three hundred thousand feet of lumber in addition upon the same terms, if he should elect so to do; and was to "exercise all reasonable diligence in arriving at a speedy execution of the terms of the contract." He also engaged not to manufacture any boards, lumber or shingles for any other person until the contract was filled. In consideration of the foregoing, Cary promised to receive and pay for each and every load upon delivery thereof according to the terms of the contract, $28 per thousand feet for the lumber, and $4.90 per thousand for the shingles.

On the 18th of May following — nearly seven months after this contract was made — McIntyre had neither delivered nor offered to deliver any of the lumber or shingles mentioned therein; and Cary sent him the following letter:

"GUNNISON, COLO., May 18, 1881.

"W. F. McINTYRE, Esq.— Dear Sir: You having failed to comply with the terms and conditions of the contract made and entered into between yourself and myself on the 13th day of October last, I hereby notify you that I shall from this day treat said contract as broken, and the terms and conditions therein sought to be made binding upon me will be considered as of no effect. If you wish to enter into a new contract on such terms and conditions as we may hereafter agree upon, I · would be pleased to talk with you.

"Yours,            WALTER CARY, JR."

A day or two after receiving this letter McIntyre encountered one Uppercu, who was acting as the agent of

Cary, or rather of the firm of Buck & Cary, for whom the latter purchased the lumber. The conversation which followed resulted in the indorsement upon the back of a copy of the original contract of the following, above the signatures of McIntyre and Uppercu, as appears therefrom:

"GUNNISON, GUNNISON COUNTY, COLORADO.

"In and for the consideration that Walter Cary, Jr., pay to me $26 per thousand feet for one hundred and fifty thousand feet of lumber, the same to be delivered by me to him at the said town of Gunnison within the next sixty days, payment of said lumber so delivered to be on demand, I hereby revoke and cancel the within agreement and hold it null and void. Reserving the right to sell lumber to other parties.

"May 25, 1881.                    W. F. MCINTYRE."·

"I hereby guaranty the payment of the above one hundred and fifty thousand feet of lumber at $26 per thousand in manner aforesaid.       E. A. BUCK,

"By J. W. UPPERCU, Att'y in Fact.

"GUNNISON, COLORADO, May 25, 1881."

Uppercu carried this to Cary, who retained it and immediately expressed his satisfaction therewith, which fact Uppercu reported to McIntyre.

Thereupon McIntyre began delivering lumber, and up to the 25th of July Cary, by his agent, Uppercu, had received and paid for one hundred and eight thousand feet, both acting under the stipulation last above set forth. After the 25th of July he refused to receive or pay for any more lumber.

McIntyre brought suit upon the *original contract*, and recovered a judgment for $492. From this judgment Cary prosecutes an appeal.

We shall not consider who first violated the October contract;. neither will we determine whether the May writing was a substitute therefor, as appellant claims, or an accord thereof, as contended by appellee.

We may admit with counsel for appellee that Cary's letter gave McIntyre a right of action, and also that the May agreement was simply an accord; we may further admit that it was a kind of accord which did not, unless satisfied, bar a right of action upon the original contract.

In our judgment, the failure to render the accord a full satisfaction was the fault of McIntyre, and not of Cary. McIntyre was bound to deliver the one hundred and fifty thousand feet of lumber within sixty days from May 25th; this was an important and material feature of the accord agreement; the evidence, without conflict or contradiction, shows that, at the expiration of the time, there remained forty-two thousand feet undelivered. Cary was not responsible for this failure to comply with the agreement, and was in a position to decline further proceeding thereunder.

It is claimed that he was first in default by refusing to accept a few loads and parts of loads rejected in June. McIntyre's theory is, that since the May agreement did not expressly provide for good and merchantable lumber, or such lumber as Cary wanted, the latter was bound to accept anything tendered; he says, in testifying: "I told Mr. Cary, you will have to take just what I give you."

But we submit this is neither a fair nor a legal interpretation of the contract. If it is, McIntyre might have delivered old and unsound lumber, for there are no express words requiring it to be new or sound; he might have compelled Cary to take and pay for lumber which was worthless and unsalable at any price. This accord agreement must be construed in the light of the October contract, the business of Cary, and all other circumstances attending the making thereof. Giving it a reasonable construction, we think the lumber was to be of good quality. Cary says he refused the loads or parts of loads because they were not "merchantable;" there is evidence to show that by the word "merchantable" he

did not refer to the quality, but to the kind, of lumber. He says that under the compromise agreement McIntyre was to deliver the kind he wanted; and Cary further says: "He (McIntyre) told me if I did not want certain kinds to say so, and they would be taken down to his yard." The only denial of this last statement by McIntyre is in the language already quoted; but, notwithstanding that expression, McIntyre retained the rejected lumber, and went on delivering under the contract; he seemed to have thought no more about it until the institution of this suit some time afterwards.

A condition of an accord agreement, like that of any other contract, may be waived by the parties thereto. Under the circumstances, if Cary was bound by the contract to receive the lumber rejected, there was a waiver of this obligation to the extent, at least, of preventing McIntyre from rescinding the agreement and declaring it a nullity; he could only recover, if at all, for the loss occasioned by Cary's refusal to accept the rejected lumber. *McIntyre v. Barnes,* 4 Col. 289.

We do not agree with counsel for appellee that these are all questions of fact, and that they were properly submitted to and passed upon by the jury.

The fact that the May writing was not signed by Cary does not interfere with the mutuality or binding effect upon both parties of the accord agreement. There was no understanding that it should be signed, or even reduced to writing, before it took effect; there was ample consideration for it on both sides; Cary obtained a reduction in the purchase price per thousand, while McIntyre secured a guarantor for the payment of the price agreed upon, and acquired the privilege, denied in the October contract, of selling to other parties. Cary retained the May proposition or agreement, and notified McIntyre, by agent, of his satisfaction therewith and acceptance thereof; he acted during the succeeding sixty days under the same, receiving the lumber as delivered and paying

the $26 per thousand as stipulated in the agreement. The form of the instrument and the language used make it doubtful if there was any thought that Cary should sign it; it is more like a proposition, which, when acted upon, became binding upon both parties; the writing simply being evidence of the terms of the contract between them.

Under the evidence appellee was not in a position to maintain his action upon the October agreement. The judgment must be reversed and the cause remanded.

*Reversed.*