Helm, J.
Three questions are presented by the record, and argued by counsel. Named in inverse order, they are: First, That the cross-complaint of Taney, who was defendant below, contained causes of action which could not be joined. Second, That two issues, one legal, and the other equitable, were submitted to the jury; and that so trying an equitable question was error. Third, That the verdict of the jury was contrary to the weight of evidence.
It is questionable if there is anything in appellant’s first objection; but we will not pass upon the subject, for the reason that she is in no position to be heard thereon. The objection made, if well taken, would constitute a ground of demurrer, to be specifically stated. A demurrer was filed to the cross-complaint, but no such ground was averred therein. Had appellant’s intestate, Michael Green, who was plaintiff below, therefore, preserved an exception to the ruling upon the demurrer, which he did not, this objection would not now be available. *522 Besides, had the demurrer properly presented the subject, and had an exception to the ruling been saved, the right to be heard thereon was waived by afterwards pleading over.
Appellant is in no better position as to her second objection above stated. We are not called upon to say whether either of the issues presented to the jury was equitable; nor whether, if the finding upon either lays the foundation for an equitable judgment, the questions of fact connected therewith were not such as, under our practice, might by the Court be submitted to a jury.
The record contains the following declaration, “And thereupon, all parties consenting thereto, it is ordered by the Court that a jury come, to whom shall be submitted the following issues, etc.,” naming them. So if appears that Green expressly consented to the submission of both questions to the jury. By his so doing, appellant is estopped from now challenging the regularity of the proceeding. Parties have the undoubted right to submit, by agreement, any issue or issues of fact, equitable or legal, to a jury for determination, and having done so, they will not afterwards be heard to complain.
The third and last objection of appellant, rests entirely upon the weight to be given the evidence. Bearing directly or indirectly upon the vital question of fact in the case, Green offered the testimony of ten witnesses, including himself; Taney, but one, and that one was himself. There at first appears to be some ground, therefore', for the surprise of appellant concerning the verdict. The evidence is voluminous, and we cannot discuss it in detail, but will proceed to state as briefly as we may, our reasons for sustaining the action of both Court and jury.
Green was an officer in the employ of the D. & R. G. Ry. Company; it was his business to superintend the operating of construction trains, and, to some extent, the track laying where the road was in process of construction. Taney, appel-lee, was what is termed a boarding boss; he boarded, at times, many of the men at work under Green. The nine witnesses who support Green were, or had been, railroad employees; nearly all of them being wholly or partly under the control of Green.
Taney, at one time, brought to Denver and deposited in cer *523 tain banks, to Green’s credit, the sum of $5,500. While there is much testimony concerning numerous other financial transactions between the parties, the vital question tried, was the original ownership of this money. Green contends that it was his private funds, which he simply intrusted with Taney for the purpose of depositing in said banks, it being inconvenient for him to visit Denver in person. Taney asserts that it was his, and was deposited by him in payment and discharge of indebtedness, real or pretended, to Green. The jury, notwithstanding the large superiority in number of witnesses for the latter, must have found this issue of fact for the former.
After examining the testimony we feel warranted in entertaining and stating the following conclusions in connection therewith:
First—As between Green and Taney, the jury were justified in believing the latter. While there are a few discrepencies in the testimony of Taney, in the main it is clear, straight-forward and positive. But Green’s statements on the stand are conflicting and uncertain. It appears that he testified, some months previous to the trial, at a preliminary hearing connected with the injunction, that he only gave Taney from $2,800 to $3,100 to deposit for him; on this trial he is certain the amount was $5,500; he is sure of this because he had it counted by another party, put into an envelope, and the envelope marked on the outside.
Such a discrepency as this was well calculated to prejudice his entire testimony with a candid jury. Had he taken the precautions now’ sworn to, it is incredible that he did not, in January, remember them, and also the exact sum of money handled. Such matters, in connection with so large a sum, are not often forgotten; and the party beneficially interested seldom fails to avail himself of them, on the first and every succeeding opportunity. There could be no reconciling of the testimony of these two witnesses as to this transaction; if Green’s statements were disbelieved, his whole case must fall.
Second—Many of the matters sworn to by the nine witnesses, who appeared for Green, were highly improbable. If they were true, Taney acted and talked in a manner utterly unworthy of a sensible or careful business man. In the language of the District Judge, who tried the case: “In order not to give a verdict for *524 Taney, they, the jury, must not only be prepared to say that he committed wilful and corrupt perjury, but that he acted in a most indiscreet and foolish manner, in talking about the money he had upon his person, at San Antonio and other remote points in the State, midst crowds of persons, who, he might well suppose, would not only not protect him in his possession of the money, but who might be easily tempted to rob him of it.”
Markham, Patterson & Thomas, for appellant.
L. C. Rockwell, for appellee.
Third—There were absurdities and inconsistencies in the testimony of these witnesses, which must have attracted the attention of the jury; and some of their statements were squarely contradicted by extrinsic evidence which was doubtless accepted as true.
Fourth—The jury saw these men, noted their language, appearance and demeanor upon the witness stand; and, perhaps, also had a personal acquaintance with some of them. They knew their relations, present and past, with Green, and probable interest in aiding him, or inclination to do so.
The weight of evidence does not wholly consist in its volume, nor in the number of individuals sworn. That is a most beneficent evidential rule, which gives juries a large discretion in judging of the credibility of witnesses; which makes it peculiarly their province to discriminate between those who testify before them, and imposes upon them the duty of sifting the evidence, accepting the true and rejecting the false.
And this Court will only interfere where, upon the whole record, it appears that the jury acted so unreasonably in weighing testimony, as to suggest a strong presumption that their minds were swayed by passion or prejudice, or that they were governed by some motive other than that of awarding impartial justice to the contending parties.
We cannot say that this case furnishes such a presumption. We think the jury were justified in the findings before us.
The judgment will be affirmed.