PETER MULVANY, APPELLANT, v. GREGORY GROSS, APPELLEE.

1. A PURCHASER'S PROMISE TO PAY ENCUMBRANCE NOT COLLATERAL. —A promise made by the purchaser of a crop of oats, on which there was a chattel mortgage, to pay the mortgage debt as a part of the price of the crop, is not a collateral promise within the statute of frauds.

2. EVIDENCE TO SUSTAIN BILL OF SALE.—The note and chattel mortgage were admissible in evidence in a suit by the mortgagee against the purchaser of the crops for the purpose of showing that they evidenced the debt mentioned in the bill of sale given by the mortgagor to the purchaser, notwithstanding a misdescription of the note in the bill of sale.

*Appeal from District Court of Chaffee County.*

The facts sufficiently appear in the opinion.

Messrs. G. K. HARTENSTEIN and J. B. McCOY, for appellant.

BISSELL, J. In May, 1888, Robert Holland and Henry Newby were indebted to the appellee, Gross, to the extent of six hundred dollars. On the 16th of that month, to-

gether with Mrs. Newby, they executed a promissory note to the order of Mr. Gross, promising to pay that sum with interest on or before the 15th of October of the same year. Concurrently with the making of the note the parties executed a chattel mortgage upon a crop of oats then growing upon certain lands in Chaffee county which belonged to Newby, but were being farmed by Mr. Holland. The mortgage was put upon record, and the note remained unpaid at the time of the subsequent transactions. Sometime in the fall of the year, and while they were in stack, Holland and Newby jointly executed a contract of sale of the oats to the appellant, Peter Mulvany. The contract substantially provided for the sale of the entire crop, which it was supposed would amount to about four or five thousand bushels. According to this agreement Mulvany was to pay a certain price for the oats in the following manner:—six hundred dollars in cash, six hundred dollars, with interest on a note described as the Witcher and Gross note, four hundred and twenty-five dollars on a note to Peter Mulvany, and what might be due him on the account current, and the remainder, if any, to sundry parties named. The Witcher and Gross note was first mentioned in the contract, but the instrument contained no definite provision that it should be first paid out of the purchase price of the grain. The Gross note was the one referred to in the bill of sale as the Witcher and Gross paper. After the execution of this agreement, but before the delivery of the oats, Gross had an interview with Mulvany concerning the payment of his note and the liquidation of the mortgage debt. It does not appear that the agreement was referred to, but Mulvany said that he was to handle the crop, and he agreed to pay Gross's note out of the proceeds. Subsequently the crop was threshed and delivered. The price of the oats was not distributed according to the evident understanding and arrangement of the parties, nor according to the apparent terms of the instrument, but six hundred dollars was paid in cash at the commencement of the delivery, one hundred dollars thereafter,

and, on the final settlement, Holland and Newby's note of four hundred and twenty-five dollars was surrendered to them, some of Mulvany's accounts contracted during the delivery of the grain were charged off, and the balance was paid by a check, which was turned over to Mr. Gross and credited upon the note. The only controversy between the parties is as to what obligation Mulvany incurred with reference to the Gross note.

It is contended by counsel for the appellant that none resulted from his agreement to pay that paper. The contract is said to be within the statute of frauds, and therefore void. Such an agreement, however, has never been adjudged to be within the purview of these statutes. An agreement by a debtor to pay his creditor's obligation to a third party has never been regarded as a collateral promise, but wherever it is entered into upon a sufficient consideration and is accepted by the party to whom the money is to be paid, it has always been deemed an original promise, and enforceable by the party who is entitled to its advantages. *Thatcher v. Rockwell*, 4 Colo. 375; Brown on the Statute of Frauds, Cap. on Guaranties.

There was ample consideration for Mulvany's agreement. Part of the purchase price of the oats was paid at the time the contract was made, and the oats themselves were subsequently delivered under the bill of sale. The subsequent performance would afford an ample consideration, and the agreement itself might be referred to for the purposes of determining what the convention was, although he never signed it. *Cary v. McIntire*, 7 Colo. 173.

The note and mortgage to Gross were clearly competent testimony, and the objections made to their introduction were untenable. These papers furnished strong corroborative testimony of the truth of Gross's narration of the occurrence between himself and Mulvany. Mulvany contended that he received the oats without knowledge of Gross's claim, and he sought to avoid the force and effect of his own agreement and the conversation which he had with

Gross, by stating that his only agreement was to pay any balance that might be left after paying all the other obligations named in the bill, and that the order of payment as expressed was purely an accidental one.   The chattel mortgage, which was on record in the county covering this identical crop of oats, strongly tended to support the plaintiff's contention that he assented to the delivery of the oats to Mulvany only on Mulvany's promise to pay him the amount of the Holland and Newby obligation.   It is hardly probable that a creditor holding ample security for the payment of his debt would consent to the sale of the chattels which were his sole security without some promise, which he deemed both equally binding and safe.   The identity of the note, and the error in description, could only be shown by the production of the paper.   Clearly, under all the circumstances, the objections to the introduction of these two instruments were not well taken.   The contention that the verdict of the jury is unsupported by the testimony cannot prevail in this court. The case was tried and submitted to the jury under instructions which are not complained of.   There is evidence enough in the case to support the verdict, and there is nothing to show that the jury were influenced by passion or prejudice. Under these circumstances their verdict upon the facts cannot be disturbed.   *Kinney v. Wood*, 10 Colo. 270; *Green v. Taney*, 7 Colo. 278.

It is impossible to discover any error in the record that would warrant a reversal of the case, and the judgment of the court below is affirmed.

*Affirmed.*