27 P. 878 
1 Colo.App. 112
 MULVANY v. GROSS. 
Court of Appeals of Colorado
October 12, 1891

 
 Appeal
 from district court, Chaffee county; JOHN CAMPBELL, Judge.
 
 
 Gregory
 Gross sued Peter Mulvany for $600. Judgment for plaintiff.
 Defendant appeals. Affirmed.
 
 
 G.K.
 Hartenstein and J.B. McCoy, for appellant.
 
 
 BISSELL,
 J.
 
 
 In May,
 1888, Robert Holland and Henry Newby were indebted to the
 appellee, Gross, to the extent of $600. On the 16th of that
 month, together [1 Colo.App. 113] with Mrs. Newby, they
 executed a promissory note to the order of Mr. Gross,
 promising to pay that sum, with interest, on or before the
 15th of October of the same year. Concurrently with the
 making of the note, the parties executed a chattel mortgage
 upon a crop of oats then growing upon certain lands in
 Chaffee county, which belonged to Newby, but were being
 farmed by Mr. Holland. The mortgage was put upon record, and
 the note remained unpaid at the time of the subsequent
 transactions. Some time in the fall of the year, and while
 they were in stack, Holland and Newby jointly executed a
 contract of sale of the oats to the appellant, Peter Mulvany.
 The contract substantially provided for the sale of the
 entire crop, which it was supposed would amount to about four
 or five thousand bushels. According to this agreement,
 Mulvany was to pay a certain price for the oats, in the
 following manner: $600 in cash; $600, with interest, on a
 note described as the Witcher and Gross note; $425 on a note
 to Peter Mulvany, and what might be due him on the account
 current; and the remainder, if any, to sundry parties named.
 The Witcher and Gross note was first mentioned in the
 contract, but the instrument contained no definite provision
 that it should be first paid out of the purchase price of the
 grain. The Gross note was the one referred to in the bill of
 sale as the Witcher and Gross paper. After the execution of
 this agreement, but before the delivery of the oats, Gross
 had an interview with Mulvany concerning the payment of his
 note, and the liquidation of the mortgage debt. It does not
 appear that the agreement was referred to, but Mulvany said
 that he was to handle the crop, and he agreed to pay
 Gross' note out of the proceeds. Subsequently the crop
 was threshed and delivered. The price of the oats was not
 distributed according to the evident understanding and
 arrangement of the parties, not according to the apparent
 terms of the instrument, but $600 was paid in cash at the
 commencement of the delivery, $100 thereafter, [1 Colo.App.
 114] and on the final settlement Holland and Newby's note
 of $425 was surrendered to them, some of Mulvany's
 accounts contracted during the delivery of the grain were
 charged off, and the balance was
 [27 P. 879.] 
 paid by a check, which was turned over to Mr. Gross, and
 credited upon the note. The only controversy between the
 parties is as to what obligation Mulvany incurred with
 reference to the Gross note. It is contended by counsel for
 the appellant that none resulted from his agreement to pay
 that paper. The contract is said to be within the statute of
 frauds, and therefore void. Such an agreement, however, has
 never been adjudged to be within the purview of these
 statutes. An agreement by a debtor to pay his creditor's
 obligation to a third party has never been regarded as a
 collateral promise, but wherever it is entered into upon a
 sufficient consideration, and is accepted by the party to
 whom the money is to be paid, it has always been deemed an
 original promise, and enforceable by the party who is
 entitled to its advantages. Thatcher v. Rockwell, 4 Colo.
 375; Brown, St. Frauds, chapter on "Guaranties."
 There was an ample consideration for Mulvany's agreement.
 Part of the purchase price of the oats was paid at the time
 the contract was made, and the oats themselves were
 subsequently delivered under the bill of sale. The subsequent
 performance would afford an ample consideration, and the
 agreement itself might be referred to for the purpose of
 determining what the convention was, although he never signed
 it. Cary v. McIntyre, 7 Colo. 173, 2 P. 916.
 
 
 The
 note and mortgage to Gross were clearly competent testimony,
 and the objections made to their introduction were untenable.
 These papers furnished strong corroborative testimony of the
 truth of Gross' narration of the occurrence between
 himself and Mulvany. Mulvany contended that he received the
 oats without knowledge of Gross' claim, and he sought to
 avoid the force and effect of his own agreement, and the
 conversation which he had with [1 Colo.App. 115] Gross, by
 stating that his only agreement was to pay any balance that
 might be left after paying all the other obligations named in
 the bill, and that the order of payment, as expressed, was
 purely an accidental one. The chattel mortgage which was on
 record in the county covering this identical crop of oats
 strongly tended to support the plaintiff's contention
 that he assented to the delivery of the oats to Mulvany only
 on Mulvany's promise to pay him the amount of the Holland
 and Newby obligation. It is hardly probable that a creditor
 holding ample security for the payment of his debt would
 consent to the sale of the chattels which were his sole
 security without some promise, which he deemed both equally
 binding and safe. The identity of the note and the error in
 description could only be shown by the production of the
 paper. Clearly, under all the circumstances, the objections
 to the introduction of these two instruments were not well
 taken. The contention that the verdict of the jury is
 unsupported by the testimony cannot prevail in this court.
 The case was tried and submitted to the jury under
 instructions which are not complained of. There is evidence
 enough in the case to support the verdict, and there is
 nothing to show that the jury were influenced by passion or
 prejudice. Under these circumstances, their verdict upon the
 facts cannot be disturbed. Kinney v. Wood, 10 Colo. 270, 15
 P. 402; Green v. Taney, 7 Colo. 278, 3 P. 423. It is
 impossible to discover any error in the record that would
 warrant a reversal of the case, and the judgment of the court
 below is affirmed.