## STUYVESANT v. THE WESTERN MORTGAGE COMPANY (LIMITED).

1. EVIDENCE—CORPORATE EXISTENCE.

Proof that the defendant by his dealings with the plaintiff company as a corporation recognized it as such is evidence of its existence.

2. ESTOPPEL.

Where the vendor of real estate is estopped to deny the existence of a corporation holding a mortgage upon the property, his vendee is likewise estopped.

3. ASSUMPTION OF INCUMBRANCE—ACTION AND DEFENSE.

The vendee who has purchased real estate subject to an incumbrance thereon, which he assumed and agreed to pay, is liable to an action by the holder of the note secured by the incumbrance for the amount thereof; but any defense which would have been good as against a suit by the vendor would be available in an action by the holder of the incumbrance.

4. CONSTRUCTION OF CONTRACT.

In determining the liability of a vendee, whose deed contained a recital that he assumed and agreed to pay an incumbrance on the property, it is proper to consider not only from the recitals of the deed, but also any other written agreement between the parties relating to the sale.

5. BOND FOR DEED—CONSTRUCTION.

The bond for a deed set out in the statement of this case is construed to have required payment by the purchaser of the incumbrance mentioned therein before he was entitled to a deed.

6. POSSESSION MUST BE SURRENDERED, WHEN.

A vendee of real estate, who at the time of his purchase had agreed to pay an incumbrance thereon as part of the consideration, must surrender possession of the property in order to avail himself of a defense to an action against him by the holder of the incumbrance.

7. ATTACHMENTS UNDER 13TH SUBDIVISION OF SECTION 92, CODE OF 1887.

Action by the holder of an incumbrance against the vendee of real estate under a deed reciting that the property was subject to an incumbrance, which the vendee assumed and agreed to pay. *Held*, that an attachment was properly sustained under the 13th subdivision of section 92 of the code of 1887.

*Appeal from the District Court of Larimer County.*

THE WESTERN MORTGAGE AND INVESTMENT COMPANY (LIMITED) is a corporation, incorporated under the laws of

Great Britain, and doing business in the state of Kansas. On the 15th day of October, 1885, John Harms, of Marion county, Kansas, there borrowed of the said corporation the sum of $3,376.25, giving to said company in its corporate name his promissory note therefor, payable one year after date ; and to secure the payment of the same gave a mortgage, executed by himself and wife, upon lots 13, 14 and 15, in block 1, Beebe's addition, and lots 3, 5 and 6, in block 11, and five other lots in block 2, of Beebe's addition, all in the town of Hillsboro, Marion county, Kansas, which mortgage was duly recorded on the 19th of November, 1885.

After the maturity of this note, and on the 22d day of February, 1887, John Harms and his wife entered into a contract for the sale and conveyance to the defendant Stuyvesant of said lots 13, 14 and 15 in block 1, and lots 3, 5 and 6 in block 11 (which were included in said mortgage), together with certain other lots in the town of Hillsboro not therein embraced, which agreement was evidenced by the following bond for a deed :

" This instrument made and entered into this 1st day of December, A. D. 1886, between John Harms, of the county of Marion and state of Kansas, party of the first part, and John R. Stuyvesant, of the county of New York and state of New York, party of the second part;

" Witnesseth, that the said party of the first part hereby covenants and agrees that if the said party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said party of the first part will convey and assure to the party of the second part, or to such person as the said second party may designate, in fee simple, clear of all incumbrances whatever, by a good and sufficient warranty deed, the following lots, or parcels of ground, to-wit:

" Lots thirteen (13), fourteen (14) and fifteen (15) in block one (1), Beebe's addition to the town (now city) of Hillsboro ; lots three (3), five (5) and six (6), in block eleven in the town (now city) of Hillsboro, and lots one (1),

two (2), three (3) and four (4), in block one (1), Hill's second addition to the town (now city) of Hillsboro, all being in the county of Marion and state of Kansas.

" And the party of the second part hereby agrees and covenants to pay the said party of the first part, the sum of eight thousand two hundred and thirty-three and $\frac{75}{100}$ dollars, on the execution of this instrument, and assume the payment of a mortgage of $3,376.25 on said lots 13, 14 and 15, block 1, in said Beebe's addition to said town of Hillsboro, and also the payment of a mortgage of $800 on said lots 1, 2, 3 and 4 in block 1, in Hill's second addition to said town of Hillsboro, said sum of $8,233.75 having been paid to said party of the first part on and before the execution of this instrument, the receipt whereof is hereby acknowledged by said party of the first part.

" Now, therefore, the said party of the first part is hereby held and firmly bound unto the said party of the second part, in the sum of $16,467.50, upon condition that if the said party of the first part shall on or before the 1st day of March, A. D. 1887, convey to said party of the second part, or to such person or persons as the said second party shall designate, by a good and sufficient warranty deed in fee simple, clear of all incumbrances whatever, except said above mentioned mortgages, the said parcel of real estate above mentioned, then this obligation shall be void and of no effect; otherwise to be and remain in full force and virtue."

As a part of the consideration for the purchase price of said premises, Stuyvesant, it will be seen, assumed and agreed to pay the said mortgage and another mortgage for $800. In performance of said contract, and on the 22d day of February, 1887, Harms and his wife executed their deed for lots 13, 14 and 15 to Stuyvesant as grantee, subject to the foregoing mortgage, the payment of which the grantee assumed, and also their deed to the wife of Stuyvesant, at his request, for lots 3, 5 and 6, in block 11, the said deed containing the same recital as to the mortgage.

The note being overdue and unpaid, the plaintiff brought

this action against Stuyvesant upon his said covenant with Harms to recover the amount due. The answer of the defendant contained a general denial, and set up as a further and second defense the foregoing contract of sale between John Harms and himself, alleging that defendant had kept and performed all of the conditions of the contract to be performed by him, except the payment of the said mortgage for $3,376.25. The defendant then alleged that he requested Harms to execute and deliver deeds according to the terms of said contract of sale, conveying lots 13, 14 and 15 to himself, and lots 3, 5 and 6 to his wife; and the answer further alleges that a deed of the three lots to his wife should, under the contract, have been conveyed free and clear of all incumbrances, whereas in fact it was made subject to the mortgage, the payment of which, by the deed, the grantee (his wife) was made to assume.

The defendant further alleges that this failure upon the part of Harms to make the deed of the three lots to the wife of the defendant conform to the agreement escaped his attention, because of his neglect, at the time of their delivery, closely to scrutinize the deeds which were drawn by Harms, the latter being then the confidential agent of the former. Wherefore, as it is said, Harms having failed to convey these three lots free from all incumbrances, according to the said agreement, and that being the sole consideration which moved the defendant to assume the payment of the mortgage, he is relieved of his obligation to pay the note.

The plaintiff demurred to the second defense on the ground that it did not contain facts sufficient to constitute a cause of defense, and the court sustained the demurrer. Trial was had before a jury, and a verdict was given for the amount of the note, upon which judgment was rendered, from which the defendant appeals to this court. Such additional facts as will throw light upon the controversy will be mentioned in the opinion in their appropriate place.

Messrs. ROBINSON & LOVE, for appellant.

Mr. JEFFERSON McANELLY, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The specifications of errors assigned and discussed by counsel are, *first*, that the court improperly admitted in evidence the articles of incorporation of the plaintiff company. *second*, that the court erred in sustaining a demurrer to the second defense in the answer; *third*, that the court should have granted a nonsuit at the close of plaintiff's testimony; *fourth*, that the court should have directed the jury to find for the defendant on the issue raised by the traverse of the affidavit in attachment; *fifth*, that the court should have admitted in evidence the deed of Harms to Mrs. Stuyvesant; *sixth*, that the court erred in giving certain instructions.

Counsel for both parties concede that the articles of incorporation were not authenticated as required by our statute ; but the appellee contends that the ruling of the court admitting the articles in evidence was not prejudicial error, because, under a general denial which goes only to the merits of an action, the plaintiff's capacity to sue is admitted; and that the incapacity of the plaintiff to sue must be taken advantage of by an affirmative defense in the answer specifically alleging the incapacity, because such a plea is dilatory in character, and in the nature of a plea in abatement under the old practice. As to this, the authorities are conflicting. *Ontario State Bank v. Tibbits*, 80 Cal. 68; *Nat. Life Ins. Co. v. Robinson*, 8 Neb. 452; *Dietrichs v. L. & N. W. R. Co.*, 13 Neb. 43; Beach on Private Corps., sec. 869, and authorities cited; Pomeroy's Rem. & Rem. Rights, secs. 697, 698, 708, 711; Bliss on Code Pleading (3d ed.), sec. 246 *et seq.*

We need not decide this controverted question here, for, as the appellee contends, the evidence shows that not only did the defendant expressly agree with Harms to pay this indebtedness to the plaintiff company, but in his subsequent dealings with the company, in the way of paying interest to it upon said note, and in other respects, he repeatedly recognized the

plaintiff and dealt with it as a corporation, and, besides this, he is a privy in estate with Harms, and as Harms could not, in a suit brought by the company on the note against him, be heard to deny or question the capacity of the plaintiff to sue as a corporation, the relation which the defendant sustains to Harms would likewise preclude him from raising a similar objection.  *Stoutimore v. Clark*, 70 Mo. 471.; Beach on Private Corporations, sec. 866 ; 2 Herman on Estoppel, sec. 822; 2 Morawetz on Corps. (2d ed.), secs. 774–778.

So, whether we hold the defendant technically estopped to deny plaintiff's capacity to sue, or merely that his dealings with the plaintiff constitute *prima facie* evidence, at least, of its incorporation and its capacity to sue, the result would be the same, and the error of the court in improperly admitting in evidence the certificate of incorporation is not prejudicial error.

The second and third assignments of error may properly be considered together.  They relate to the main controversy in this case, which is over the construction of the bond for the deed.

If the defendant's agreement to pay the mortgage was made because of a promise by Harms which the latter never kept, then, in a suit by Harms against the defendant upon this promise, the plaintiff could not recover, for the consideration upon which the agreement rested failed.  The rule should be the same when the plaintiff, for whose benefit the promise was made, brings a suit directly against the defendant, certainly in the absence of a showing that the plaintiff has acted upon the promise, and relying upon it, has changed its condition for the worse.

The vital question, therefore, is, what was the agreement of Harms in relation to the conveyance of the property described in the bond for the deed?  This particular mortgage included not only lots 13, 14 and 15, which, at the request of the defendant, were conveyed directly to him by Harms, subject to the mortgage, but it included also lots 3, 5 and 6, which the defendant requested Harms to convey to

his wife. The amount of this mortgage and the mortgage of $800 mentioned in the agreement, together with the cash payment made by the defendant to Harms, constituted the full consideration which the defendant agreed to pay to Harms for all the lots sold. This mortgage, therefore, was part of the consideration of their purchase price. The only respect wherein the defendant claims that Harms failed to perform the covenants of his bond is that in the deed of lots 3, 5 and 6 to the defendant's wife, the conveyance was made subject to the mortgage, whereas it should have been free and clear of all incumbrances. The ground upon which defendant bases his claim that three of the lots covered by this mortgage were to be conveyed free from the mortgage lien is that, in the fourth paragraph of the agreement, it is recited that Stuyvesant "agrees to * * * assume the payment of a mortgage of $3,376.25 on said lots of 13, 14 and 15, block 1."

We agree with counsel for appellant that the rights of these parties should be determined not merely from the recitals of the deeds of conveyance which were given in carrying out the terms of the agreement for sale, but that we should also look to the latter for determining the intention of the parties. We may also examine the agreement of the parties, whether expressed in one or more writings, for the purpose of ascertaining what object they had in view, and to this end may look, also, to the bond which Stuyvesant gave to Harms on December 1, 1886. From all these written instruments it appears that Harms desired to sell Stuyvesant certain property. The price agreed upon was $12,410. Of this, $8,233.75 was paid in cash. The balance was represented by this particular mortgage and a smaller mortgage of $800, which Stuyvesant agreed to pay. The mortgage in question here covered not only lots 13, 14 and 15, but also lots 3, 5 and 6, and five other lots.

But the construction sought to be put upon this agreement by the appellant is too narrow. The entire contract shows that what Stuyvesant really agreed to pay was the amount of this mortgage, or, rather, the note secured by

this mortgage, which embraced not only lots 13, 14 and 15, but lots 3, 5 and 6. Merely describing the mortgage which the defendant agreed to pay as covering a portion only of the lots therein subject to its lien does not give to the defendant the right to insist upon a deed of the lots not mentioned as covered by the mortgage, but actually included therein, free from its incumbrance.

The agreement of Harms was to convey the property free from all liens except the mortgage mentioned, and this particular mortgage constituted a lien, as an examination of the record would show, upon the lots which the defendant directed Harms to convey to his wife, as well as a lien upon the three lots conveyed by Harms to him. This covenant Harms carried out literally and according to its true spirit. Another part of this bond for a deed provides that before Harms should be required to make a conveyance, Stuyvesant should "*first* make the payments and perform the covenants hereinafter mentioned." Stuyvesant made the cash payments and paid the $800 mortgage. The mortgage for $3,376.25 was due at the time this agreement was executed, but Stuyvesant has not yet paid it. His own wrong in not paying this mortgage as he agreed prevented Harms from deeding any of the property covered by it free from its lien, and Stuyvesant should not be allowed to profit by his own wrong merely because, in response to his request, Harms conveyed this property before he could have been required to do so by the terms of the agreement, when Stuyvesant could at once free the lots conveyed to his wife by paying, according to the very terms of his covenant, the mortgage which constitutes the lien.

There is another reason why this second defense is subject to the demurrer. It is a familiar principle that each defense of an answer must be complete in itself. The complaint alleges that the defendant accepted the deed from Harms to the property in controversy, placed the same upon record, and went into possession of the property under the deed. This allegation of possession is not denied in this second

defense. Certainly, if Harms should have sued the defendant on his agreement to pay this mortgage, the defendant could not be heard to allege that Harms' consideration for defendant's agreement was not kept, and at the same time retain possession of the property, nor could defendant do the same in this action by the plaintiff. *Gifford v. Father Matthew T. A. B. Soc.*, 104 N. Y. 139.

While the language of the agreement is that plaintiff shall pay the mortgage, the real meaning of the covenant is that plaintiff shall pay the note which the mortgage secures,— for the discharge of the note is the only way to pay the mortgage,—the latter being only the incident, the note being the principal thing. In this view the cause of action sued upon is the overdue promissory note, and that was a good ground of attachment under our statute when this action was instituted. But if the cause of action should be held to be upon this written agreement, the latter is for the unconditional, absolute payment of a sum certain, and under the doctrine that that is certain which can be made certain, this agreement binds the defendant to pay, not only a sum certain, but within a certain time and to a certain payee, so that upon it an attachment was permissible.

The case of *Hurd v. McClellan*, 14 Colo. 213, held that an attachment bond was not a written instrument for the direct and unconditional payment of money. Hence, in a suit upon such a bond, an attachment could not issue. But that is entirely different from the agreement in this case. *Schmucker v. Sibert*, 18 Kan. 104; Drake on Attachments (7th ed.), 27 a.

In view of our determination as to the nature of Harms' agreement, the refusal of the court to admit in evidence the deed of Harms to the defendant's wife could not have been prejudicial error, for that deed was merely evidence of the allegation in this second defense that the conveyance of lots 3, 5 and 6 was made subject to the payment of this mortgage, and, as we have already determined, this was in strict accordance with the agreement made by Harms.

An examination of the instructions given to the jury shows that the law was given by the court substantially in accordance with the views set forth in this opinion.   There being no substantial errors committed by the court below, it follows that the judgment should be affirmed.

*Affirmed.*