SKINNER ET AL. v. HARKER ET AL.

1. MORTGAGORS AND MORTGAGEES—ASSUMPTION OF INCUMBRANCE.
Where the owner of a tract of land subject to an incumbrance conveys
   a portion thereof to grantees who, as part of the consideration,
   assume and agree to pay the incumbrance, and who in turn convey
   with a like assumption by their grantee, and the original vendor
   afterwards conveys the residue of the land to others with the un-
   derstanding that the incumbrance is to be paid by those purchasing
   the part first sold, that part of the land is, as between the different
   debtors, the primary fund out of which the entire mortgage debt
   is to be paid before resorting to the portion last sold.
2. SAME—ELECTION OF REMEDIES.
A mortgagee has his election to sue and obtain a personal judgment
   upon a contract of assumption of the incumbrance by the mort-
   gagor's grantee, before resorting to a foreclosure of the mortgage;
   but when he has voluntarily elected to pursue his remedy by a sale
   of the property, he should, under circumstances such as this case
   discloses, be held to that remedy exclusively until it is ascertained
   that the proceeds of the sale are insufficient to pay the debt.
3. PRACTICE—NEW PARTIES—JUDGMENT.
If persons not parties to an action appear therein and file a cross
   complaint, by which they desire to introduce into the case a new
   issue, a copy of their pleading must be served upon the adverse
   party. Unless such service is had or waived, no judgment predi-
   cated upon such pleading can be rendered in their favor.

*Appeal from the District Court of Arapahoe County.*

THIS is a controversy, as to their respective liabilities to the
mortgagee and as to their equities among themselves, between
a mortgagor, a mortgagee, and successive grantees of the
mortgagor, of different parcels of the mortgaged property
conveyed at different times, some of which grantees assumed
the payment of the entire debt, others only a portion thereof,
and others took only the mortgagor's equity of redemption.

James B. Foote was the owner of a fractional quarter sec-
tion of land in Boulder county containing 148 acres, and
during the time of his ownership, in May, 1888, he executed
a trust deed to the defendant Ingersoll, as trustee, to secure

the payment of two promissory notes payable to Crippen, Lawrence & Co. for $6,600, due in five years.

In October of the same year Foote conveyed to D. W. Skinner and Sampson Ware, two of the defendants in this action, thirty acres of coal land off the south part of said quarter section, and said grantees, as a part of the consideration, assumed and agreed to pay said entire incumbrance upon the whole tract.

There were successive conveyances of this thirty acre tract wherein each grantee (with one exception) assumed the payment of the entire incumbrance, down to the last grantee, viz., The American Investment Company, the original plaintiff herein, which assumed and agreed to pay only "the proper proportion said thirty acres should pay of said incumbrance."

In 1890 James B. Foote conveyed the balance of the quarter section, consisting of 118 acres, to Mary A. Miller by warranty deed free from the foregoing lien; and with the understanding that Skinner and Ware, prior purchasers of the parcel first conveyed, would pay the incumbrance. Mrs. Miller thereafter, with similar covenants and the same understanding, conveyed the same to Harriet E. Foote, the wife of James B. Foote. About two years later Harriet Foote executed a trust deed upon this tract of land to William Martin, as trustee, to secure the defendants Harker and Williams for a loan of $12,000, which loan was made with the same understanding as to the assumption of the prior mortgage debt by the purchasers of the first tract.

Before this suit was brought, Harker and Williams, the better to protect their interests, bought of Crippen, Lawrence & Co. the first notes mentioned, and for a default in the payment of interest thereon, which default gave the owners of the notes the right to declare the entire indebtedness due, they exercised this right and requested the trustee Ingersoll to proceed to a sale and foreclosure of the trust deed to pay the said notes and costs of sale, which he proceeded to do, and in the advertisement of said sale it was

stated that sale would first be made of the said thirty acre tract for said purpose, and in case of a deficiency in the proceeds thereof to pay said notes, sale would be made of the balance of said quarter section.

Thereupon, and on the day before the sale was advertised to take place, the original plaintiff in this action (The American Investment Company) filed its complaint in April, 1893, against Ingersoll as trustee, to restrain him from making the sale as advertised, on the ground that an attempt was being made by the note owners to burden said thirty acre tract, then owned by the plaintiff, with the said incumbrance upon the entire tract, and that the then holders of the Crippen, Lawrence & Co. notes, also owners of the $12,000 note secured by the trust deed on the 118 acres, had bought the former fraudulently and in bad faith, thereby to preserve for the satisfaction of their junior note the 118 acre tract which was, with the thirty acre tract, included in the first trust deed. Plaintiff further offered to pay said incumbrance, represented by the Crippen, Lawrence & Co. notes, in full, which it claimed the holders of the notes refused to receive, and averred its willingness to pay said notes on condition that it be subrogated to the rights of Harker and Williams, the owners. The only prayer was for injunctive relief.

Without notice to the defendant,—in accordance with a practice prevailing in some of the courts of this state which has been greatly perverted, and from which grievous wrongs have resulted under the protection of a misused extraordinary writ,—a temporary restraining order was issued.

Ingersoll made his answer, disclaiming any interest, but alleging that he was simply performing his duty as trustee. By leave of court, Harker and Williams, the owners of all the notes and the real parties in interest, entered their appearance and filed an answer denying substantially all of the material allegations of the complaint, and by a cross complaint set up the different conveyances of this quarter section, as herein before set out, and alleged that, as a matter of fact,

and as matter of law, the south thirty acre tract belonging to the plaintiff was holden, and primarily liable, for the entire incumbrance upon the fractional quarter section, and they asked that Foote, Skinner and Ware and other persons interested be brought into court to the end that the rights of all parties be determined.

Skinner and Ware were served with process to appear and answer to the complaint of the plaintiff and the cross complaint of Harker and Williams, and, responding thereto, filed an answer denying the allegations of the plaintiff's complaint, and an answer to the cross complaint of Harker and Williams, admitting the execution of the divers deeds and trust deeds and the assumption of indebtedness by the several grantees, as above set forth, and concluding by alleging that the said thirty acre tract was primarily liable, and should first be sold for the satisfaction of the Crippen, Lawrence & Co. notes.

Harriet E. Foote and James B. Foote voluntarily appeared in the case, and filed their answer denying the charges of the complaint, and admitting, in substance, the cross complaint of Harker and Williams, and they also filed a cross bill or cross complaint setting up the conveyances, as already mentioned, and asking that the thirty acre tract be primarily charged with the lien of the whole indebtedness on the Crippen, Lawrence & Co. notes, and that it be decreed to be the primary fund out of which the whole indebtedness should be paid. They also asked that all parties who assumed the mortgage debt should contribute and pay into court the whole amount thereof for their protection, and if found necessary that any of the fractional quarter section should be sold, that said thirty acre tract should be first subjected to the payment of the incumbrance before resorting to the balance. The record does not show that a copy of this pleading was served on Skinner and Ware, or that they ever were required to, or did, plead thereto.

After the institution of the action and before the trial, The Colorado Smokeless Coal Company, having acquired

the thirty acre tract by purchase from The American Investment Company, was substituted as plaintiff.

All of the various deeds, both warranty and trust, were duly filed for record long prior to the acquisition of the title by the plaintiff in this action.

There was no evidence introduced at the trial touching the alleged fraud of the trustee; and no oral testimony of any character was introduced; but the parties agreed that the cross complaint as filed by the Footes should, for the purposes of the case, be taken to be substantially correct. The substance of this cross complaint is sufficiently set out in the statement already made.

The court made what was considered a finding of fact to the effect that the trustee was not authorized, under the terms of the trust, to advertise the said south thirty acres for the payment of the whole indebtedness due on the Crippen, Lawrence & Co. notes, but that said thirty acres is liable only for 30/148 of said indebtedness, this being its proper proportion.

The court thereupon ordered the plaintiff, within thirty days, to pay to the holders of the notes such proportion of the indebtedness, amounting (less some payments of interest made) to $1,425.89, and, in default thereof, that the trustee should proceed to advertise the said tract of land for the payment of said proportion of the indebtedness.

The plaintiff at once paying this amount into court, the court thereupon ordered and decreed that the said thirty acre tract be released and cancelled from any lien or demand of any description whatsoever by reason of said claim represented by said notes, and set aside and cancelled and held for naught said trust deed securing the payment of the same; but as to the balance of the quarter section of 118 acres, the said trust deed was decreed to be in full force and effect. The court also made the temporary injunction theretofore granted permanent.

A few days after this decree was rendered, the court entered an additional decree based upon its findings to the effect not

only that said thirty acre tract was not a primary fund for the payment of the whole of said indebtedness, but only to a proportionate share thereof, but also that the defendants Skinner and Ware assumed, and became personally liable to pay, the whole of the said indebtedness of Foote upon the said Crippen, Lawrence & Co. notes, which are now owned by Harker and Williams, ordering that Skinner and Ware, within thirty days, pay into court the balance of said indebtedness represented by the notes left after the payment by the plaintiff of its share thereof (viz., $5,846.41), and that in default of such payment, execution issue against Skinner and Ware to enforce the judgment against them. The court further decreed that Ingersoll, as trustee, execute the proper reconveyance releasing from the lien of said trust deed the south thirty acres of land belonging to the plaintiff.

Exceptions were duly preserved to this decree by Skinner and Ware, and from the entire decree they have prosecuted their appeal to this court. The Footes and Harker and Williams objected to that portion of the decree which cancelled the trust deed and released the south thirty acre tract from the lien of the entire incumbrance.

Mr. ALVIN MARSH, for appellants.

Messrs. TELLER, ORAHOOD & MORGAN, for appellees Harker and Williams.

Messrs. HENDERSON & CAMPBELL, for appellees H. E. and J. B. Foote.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

There are but two questions for determination upon this appeal:

*First.* Is the thirty acre tract the primary fund out of which, as between the different debtors, the entire mortgage debt is first to be paid, before resorting to the other tract of

one hundred and eighteen acres, or is the former liable only for its proportionate share of the indebtedness?

*Second.* Was the personal judgment against appellants authorized?

In this opinion Harker and Williams are designated as mortgagees, the securities as mortgages, and the notes as mortgage indebtedness, for the rules as to the questions before us concerning mortgages proper apply equally to trust deeds, both being liens or securities upon land for the payment of a debt.

1. We are clearly of the opinion that the court erred in decreeing the thirty acre tract not primarily holden for the payment of the entire mortgage debt represented by the Crippen, · Lawrence & Co. notes. The assumption by the plaintiff, in the deed of conveyance to it, of only a proportionate share of such incumbrance is good as against its immediate grantor; and plaintiff's personal liability to its grantor and to the mortgagee is limited by such contract; but as to the mortgagee and the previous grantees, in so far as is concerned the mortgaged land, the contract between the mortgagee and mortgagor cannot thus be varied, nor can the contract of assumption by the prior grantees inuring to the benefit of the mortgagee be thus set aside. When a mortgagor grants the mortgaged premises in separate parcels, and at different times, he may, as between himself and his grantees (though not as against the mortgagee) burden one tract with the entire debt, and release the remainder; and when he deeds one parcel to a grantee who assumes and agrees to pay the entire mortgage debt, and subsequently, by warranty deed, conveys the balance of the land, as between these three persons and the subsequent grantees with notice, the tract first conveyed is, in equity, the primary fund which must be exhausted before the other tract subsequently conveyed can be applied to the payment of the debt. Therefore, when Foote, by his deed, which was at once recorded, conveyed to Skinner and Ware the thirty acre tract, and they agreed to pay, as part of their purchase price, the entire debt secured by the mortgage, this

tract, in the hands of these and all subsequent grantees, became primarily charged with the payment of the whole debt. The mortgagee and all prior grantees, unaffected by plaintiff's assumption from his immediate grantor of only a part of the debt, had the contract right to subject this tract of thirty acres to the burden of the entire debt before resorting to any of the remaining one hundred and eighteen acres; so that the mere fact the mortgagee had a junior mortgage upon the latter tract only which it proposed to reserve as a separate and distinct fund to satisfy a later indebtedness, is immaterial so far as the plaintiff in this case is concerned, for the mortgagee had the unquestioned right to do this. To this effect are 3 Pomeroy's Eq. Juris., secs. 1206, 1225; 1 Jones on Mortgages, sec. 749 *et seq.;* Sheldon on Subrogation, sec. 82; 2 Jones on Mortgages, secs. 1091, 1625; *Burger v. Greif,* 55 Md. 518; *Welch v. Beers,* 8 Allen, 151; *Marsh v. Pike,* 10 Paige, 595; *Caruthers v. Hall,* 10 Mich. 40; *Weber et al. v. Zeinet et al.,* 30 Wis. 283; 2 Devlin on Deeds, secs. 1056, 1074, 1096.

For still another reason this decree is wrong. If the indebtedness must be apportioned between the two tracts, which is not the rule under the facts of this case, the proportionate share thereof which the thirty acres should pay is not necessarily such proportion as the said tract bears to the entire quarter section. The record shows that the thirty acres were worth one hundred thousand dollars. There is no evidence of the value of the one hundred and eighteen acres. It may be worth more or less per acre than the smaller tract. If there is any difference in value, the proportion the latter tract is to pay should be determined upon the basis of relative value, and not that of the relative number of acres in the two parcels. There being no evidence in the record upon which to predicate the finding in the decree in this particular, the court erred in apportioning the burden upon the basis of acreage. 2 Jones on Mortgages, sec. 1625.

2. That the appellants' assumption of the mortgage debt made them, as to their grantor, the primary debtors of the

mortgagee, and the grantor their surety, and that they, as such grantees, are personally liable to the mortgagee for the whole debt, is unquestioned. That the rights of all the parties who did appear, as well as the rights of all concerned as successive grantees, might, under proper pleadings, be settled in one action, is also true. The law is, also, that the mortgagee has his election to sue and obtain a personal judgment upon the contract of assumption before resorting to a foreclosure of the mortgage. Instead of doing so, however, in this case, the mortgagees elected to pursue their remedy against the land by sale and foreclosure at the hands of the trustee. To the enforcement of this remedy the plaintiff objected, and by suit sought to restrain the sale upon the ground that this land was subject only to its proportionate share of the mortgage debt.

The answer and cross complaint of the mortgagees, Harker and Williams, sought to defeat the injunction by obtaining a decree to subject this thirty acre tract to the payment of the debt, as the primary fund for that purpose, and to preserve for the satisfaction of a junior debt, owned by them, the remainder of the quarter section, upon which latter only was their junior debt secured. A like object as to the thirty acre tract was the aim of the appellants in their answer. Up to this stage certainly no reasonable claim can be made that appellants' personal liability was an issue in the case. The object which James B. Foote, the mortgagor, had in view was to have his grantees, who assumed the mortgage debt, save him harmless; while that of his wife, as the last purchaser and grantee of the one hundred and eighteen acres that were intended to be relieved of the lien of the mortgage until the parcel first conveyed was exhausted, was to cast upon the latter the burden of caring for the mortgage debt to the extent of its value.

The Footes were not made parties by the plaintiff, nor. does the record show that the court ordered them to be brought in at the request of the mortgagees. They voluntarily appeared and filed their pleading, but did not, so far as

the record discloses, serve a copy upon the appellants, as section 17 of the code of 1887 requires.  If their cross complaint sought to introduce into the case any such issue as appellants' personal liability, before that could be done a copy of their pleading must be served upon the adverse parties, which was not done, and this requirement was not dispensed with, by agreement or waiver.  It is clear, therefore, that the pleadings tendered no such issue as warranted the court in rendering a personal judgment against the appellants.  A careful examination of the record satisfies us, in addition to this, that it was not treated by the parties as an issue in the case, nor was there any evidence responsive to it, and that the first intimation thereof came when the court entered its so-called second decree.  The mortgagees having thus voluntarily elected to pursue their remedy by a sale of the mortgaged property, should be held to that remedy exclusively, unless the proceeds of the sale were insufficient to satisfy the mortgage debt, and until that fact was ascertained.  The mortgagees not having asked for personal judgment against their primary debtors, such a judgment in this action is not to stand, merely because it might have been obtained in an action brought for that purpose, or might have been rendered, had the pleadings so warranted, in the present action.  5 Ency. Pl. & Pr., pp. 624, 673, 957, 958, *et seq.*

Besides, the appellants insist, also, if this personal judgment is paid by them, that they will not be in a position to be subrogated to the rights of the mortgagees, and their remedy against their own grantees will be ineffective, if not altogether lost.  However this may be, and whatever the appellants' equities in this case may be, if they should be required to pay the judgment, we need not determine, because, for another reason, this judgment should not stand.

If the pleadings and the evidence had warranted the personal judgment,—this being an equitable action,—all of the parties to be affected by the decree should have been brought in, if not already before the court, and the equities of the various grantees and debtors, among themselves, determined

in the one action.   To say that the appellants may still, by an appropriate action, have contribution from those liable to them, is no sufficient answer.   If in the pending action, which was brought against the trustee by a remote grantee of part of the mortgaged property who personally assumed only a part of the debt, merely to restrain a sale and foreclosure of the trust deed constituting the incumbrance, the issues have been so enlarged in the progress of the case as to justify a personal judgment against another and prior grantee of the same parcel of the mortgaged property who assumed the entire mortgage debt, the court might have provided, and it was its duty to provide, in the decree for the protection of such grantees when they, or any of them, paid the judgment, not only with respect to the mortgaged property, but as against their grantees, who, in turn, assumed the same debt. The decree contains no such provision as to the latter, and erroneously cancelled the mortgage upon the only property which furnished any security for the appellants.

The conclusions reached by us in no wise prejudice or impair the rights of the mortgagees.   They may be delayed for a time in the recovery of their debt, which is, however, the result of their own election.   The result of our determination is that the thirty acre tract is the primary fund for the payment of the mortgage debt, and that the court should have decreed a sale thereof in accordance with the prayer of the mortgagees unless the owners of the tract paid the full amount of the indebtedness.   The injunction was improperly awarded, and should be vacated.   The mortgagees, and various grantees, if they so desire, may, in the district court, have leave to amend their pleadings as they are advised, so that all of the questions involved in this case and the rights of all the parties interested may be determined in one action; and all necessary parties, if not already present before the court, may be brought in for that purpose.

The decree of the district court will, therefore, be reversed, and the cause remanded with instructions for further proceedings in accordance with the views herein announced.

*Reversed.*