## M. E. SMITH & CO. v. WILSON.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1925.)

No. 6848.

**1. Courts ⟪359 — Federal courts apply local contract law.**

In a controversy involving contractual rights of parties, the local law of the state in which the contract was made is followed by the federal courts.

**2. Contracts ⟪187(1)—Third person may sue on contract only where intended for his benefit.**

Where two parties contract for direct benefit of third person, he may adopt and sue on contract; but where contracting parties intend no direct benefit to third person, he acquires no legal rights thereunder, merely because he might benefit incidentally if contract be performed.

**3. Contracts ⟪187(4)—Contract of purchaser of business held to give creditors right to sue.**

A contract for sale of chain of stores, in consideration of land and buyer's assumption of indebtedness, the terms of which evidenced an intent to substitute purchaser in place of seller as debtor, and which contained stringent provisions for preservation of property for protection of creditors, *held* for direct benefit of creditors, to enforce which they could sue.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by M. E. Smith & Co. against Arvel E. Wilson. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

G. Dexter Blount, of Denver, Colo. (Harry S. Silverstein, of Denver, Colo., Charles B. Keller, and George Doane Keller, both of Omaha, Neb., on the brief), for plaintiff in error.

Ivan A. Allen, of Denver, Colo. (B. O. Wheeler, of Denver, Colo., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and WILLIAMS, District Judge.

STONE, Circuit Judge. This is an action at law against Wilson for the payment of certain accounts owing by Hungerford, the payment of which is alleged to have been assumed by Wilson under a contract between Hungerford and Wilson dated October 2, 1922. At the conclusion of plaintiff's evidence the court directed a verdict on the theory that the above contract was not made for the benefit of such creditors and gave them no legal rights but was for the sole benefit of Hungerford and benefited the creditors only incidentally. From a judgment on such directed verdict this writ of error was sued out.

There is no dispute of fact and the case is presented here as involving a single proposition of law which is whether the contract between Wilson and Hungerford was such that certain creditors of Hungerford could adopt it as being made for their benefit. No question is raised as to these particular creditors having the right so to do if the contract gave any creditors such right but defendant contends that the contract gave no rights to any creditors.

[1, 2] There is no difference between the parties as to the applicable law. In this character of controversy, the local law is followed by the federal courts. Central Elec. Co. v. Sprague Elec. Co., 120 F. 925, 57 C. C. A. 197 (7th C. C. A.). This contract was made and was to be performed in Colorado. Colorado follows the rule generally announced in American jurisdictions (13 C. J. 705 et seq.; 6 R. C. L. p. 884), which is that where two parties contract for the direct benefit of a third person, that person may adopt and sue upon the contract; but that where the contracting parties intend no direct benefit to such third person, he acquires no legal rights thereunder merely because he might be benefited incidentally if the contract be performed. Cripple Creek Bank v. Rollestone, 70 Colo. 434, 438, 202 P. 115; Grimes v. Barndollar, 58 Colo. 421, 435, 148 P. 256; Moore v. First National Bank, 38 Colo. 336, 88 P. 385; Hastings v. Pringle, 37 Colo. 86, 86 P. 93; Starbird v. Cranston, 24 Colo. 20, 48 P. 652; Skinner v. Harker, 23 Colo. 333, 340, 48 P. 648; Stuyvesant v. Western Mortgage Co., 22 Colo. 28, 43 P. 144; Green v. Morrison, 5 Colo. 18, 20; Green v. Richardson, 4 Colo. 584, 586; Lehow v. Simonton, 3 Colo. 346. Also see Cobb v. Fishel, 15 Colo. App. 384, 62 P. 625; Wilson v. Lunt, 11 Colo. App. 56, 52 P. 296; Mulvany v. Gross, 1 Colo. App. 112, 27 P. 878.

The only Colorado case relied upon by defendant in error is Cripple Creek Bank v. Rollestone, 70 Colo. 434, 202 P. 115. That was an action by a bank, the payee of a promissory note, against an indorser after delivery of the note. Under the law of Colorado, such an indorser is held as a guarantor (page 436). The action was upon the guaranty and not upon the theory of a contract made for the benefit of a third person. On page 437 (202 P. 116) the court said:

"Although the complaint charges defendant upon a contract of guaranty, in the brief of plaintiff in error it is said that the action is upon a contract made between defendant and the commissioner for the benefit of the bank. Unquestionably one not a party to a contract, made by others for his benefit, may maintain an action on it; but this is not such an action. It is, in terms, upon the guaranty implied or resulting from the indorsement."

Although the decision in that case involved only the matter of a written guaranty to a person named in the guaranty, yet the court, in the course of the opinion (page 438) recognizes that unnamed third parties, for the benefit of whom the guaranty was made, might recover for it says:

"Of course, had the bank become insolvent, and this note as an asset had passed into the hands of a receiver, he would, as a representative of the creditors, have a right of action against the defendant.

"The third persons, for whose benefit the contract in question was made, were the creditors of the bank, and as to them a receiver would sustain, in a general sense, the same relation as that sustained toward them by the commissioner."

The question presented here is, therefore, whether the benefits to creditors from this contract was direct, within the above rule, or only incidental. The contract is not set forth in full in the record but is summarized in a statement which includes quotations therefrom.

The situation revealed by the contract seems to be as follows:

Hungerford was the owner of a line of stores located in eight towns in Colorado. His liabilities in connection therewith for wholesale bills, labor claims and balance of purchase price was around $60,000. He sold

this entire line of stores to Wilson for 2½ sections of land and the assumption by Wilson of the payment of all of this indebtedness "of every nature whatsoever in connection with the said stores." The exact amount of this indebtedness was not known but it was estimated to be $60,000, and that figure was the basis upon which the contract was made, variations therefrom being taken care of by a provision in the contract. The one outstanding feature and purpose of the contract is the payment by Wilson of these debts and the relief of Hungerford therefrom. This feature appears again and again. The contract contains the following specific statement:

"The said Wilson, party of the second part, strictly agrees and binds himself and this contract was made possible only through that pledge, that he and the said Wilson will forthwith, so fast as he can convert stock and goods in stores into cash, immediately pay all wholesale bills covering goods purchased by the said Arah L. Hungerford for the said stores and that he will not in any way divert or allow to be diverted any receipts from the said stores into any other channels other than the immediate payment of said wholesale bills which in this transaction he is assuming and agreeing to pay, except for the regular expense of the running of and conducting of said stores."

Wilson is permitted to use for his own purposes not to exceed $300 per month until these debts are paid. In the arrangement to take care of any deviation of the amount of debts from $60,000 Wilson was to give Hungerford a note for the difference less than $60,000, but it is specifically provided that such note should be : "Shall carry with it an inscription of understanding that its said amount shall not be payable to the party of the first part, his heirs, or assigns, until the said party of the second part has paid off and liquidated all wholesale bills now owing and which the said party of the second part hereby assumes."

In several of those portions of the contract quoted in the transcript are the direct statements that Wilson "assumes" such debts or "assumes and agrees to pay" such debts. In one place is the statement "the said Wilson agreeing and binding himself to the payment of all unpaid wholesale house bills and other bills of every nature whatsoever against the said Hungerford in connection with the said stores." There was

also a provision that Wilson should at all times carry a stock "equal to the amount of 150 per cent. of whatever amount is at any time owing, which the said Wilson agrees to specifically and particularly and strictly live up to as the real essence of the contract, and as the only real security that Hungerford has for his protection." Wilson was required to keep reports and send them to Hungerford "as long as second party, Wilson, has unfinished or unpaid bills still owing, but for which Hungerford may be holden." There is no suggestion anywhere in the contract that the money should be paid to Hungerford and that he should pay the existing bills, but it is very clear that the arrangement was for Wilson to pay these bills directly to the creditors and thus to relieve and protect Hungerford from all liability thereon.

The debts here sued on are for merchandise furnished to Hungerford for one or more of the stores covered by the contract. Such merchandise constituted a substantial part of the property bought by Wilson under the contract and turned over to him.

There is evidence, outside of the contract, that the controlling, moving force inducing the contract and understood and recognized by Wilson as such was this assumption and direct payment and relief of Hungerford from this indebtedness; but the contract itself sufficiently and clearly reveals this situation.

[3] To us, the contract seems clearly intended to substitute, as far as the contracting parties could legally do so, Wilson in the place of Hungerford as the debtor. As said above, it provided for the assumption and the direct payment to the creditors of these obligations and practically every provision of the contract was aimed at securing this assumption and protecting Hungerford from having to make such payments. Also, the property to which these creditors would naturally look for payment was turned over for the purpose of being entirely devoted to that payment after deducting operating expenses and the stipulated monthly allowance of three hundred dollars to Wilson. We think the court was in error and that this contract was for the direct benefit of the creditors and that under the Colorado law they have a right to adopt and sue thereon.

The judgment should be and is reversed and the case remanded for a new trial.