STORRS, C. J., HINMAN, ELLSWORTH, SANFORD AND WALDO, JS.

SAMUEL P. TOWNSEND *vs.* GILES F. WARD AND ANOTHER.

T and K, in February, 1854, entered into a written agreement for the exchange of lands, the land of T to be conveyed to K, subject to a mortgage of $12,000, possession to be delivered whenever requested, and deeds to be delivered on or before the first day of May following. Possession was immediately after mutually delivered, and in the month of April T delivered to K a deed of the land which he was to convey, the same being made subject to the $12,000 mortgage and containing the following clause in relation thereto: " which said mortgage the said K hereby assumes and agrees to pay." K sent the deed to his legal counsel for examination, and it remained in the hands of K and his counsel until the November following, without any suggestion to T of any objection on his part to the terms of the deed. On the 7th of November K returned the deed to T, stating that he refused to accept it and should not perform the contract on his part. K had until then retained possession of the property delivered to him by T, and had offered it for sale and rent and did not afterwards offer to redeliver it to T. On a bill in equity, brought by T to compel K to convey the land which he had agreed to convey to him, it was held, that if K objected to the deed on account of the clause which has been mentioned, he should within a reasonable time have given notice to T of his objection, and that by his retention of the deed without objection for so long a time he had accepted it.

Held also that the declaration of K to his counsel, while examining the deed, soon after he received it, that he declined to accept it, was not admissible in his favor.

Where land is conveyed subject to a mortgage, the amount of which is allowed to the purchaser by a deduction from the price of the land, the law implies a promise on his part to indemnify the grantor against the mortgage debt.

BILL in equity to compel the conveyance of real estate, and for an injunction. The principal facts, as reported by a committee, were as follows :

The petitioner, and John King one of the respondents, on the 10th day of February, 1854, entered into a written agreement, by which the petitioner was to convey to King a certain building and land in Brooklyn, in the state of New York, and King to convey to the petitioner a certain house and land in Old Saybrook, in this state, the deeds to be delivered on or before the first day of May following—the Brooklyn property to be conveyed by the petitioner to King subject to a mortgage then resting upon it, to the Howard Fire Insurance Company, for $12,000—possession in each case to be delivered whenever requested, and the interest on the $12,000 mortgage to be paid by King from the time of his taking possession. Upon the failure of either party in any respect to perform his part of the agreement, the other party was to have the right to treat the contract as annulled. Soon after the execution of the agreement the possession of the Saybrook property was delivered to the petitioner, who had remained in possession, by himself and by a tenant, ever since, and had expended $500 in improvements thereon. About the same time the possession of the Brooklyn property was delivered by the petitioner to King, who continued in possession until after the present suit was brought, and had offered it both for sale and rent. On the first day of April, 1854, the petitioner, with his wife, executed a conveyance of the Brooklyn property to King, describing the premises as subject to the mortgage of $12,000 before mentioned and containing, with reference thereto, the following clause :—" Which said mortgage the said King hereby assumes and agrees to pay as part of the consideration money named herein." It had been agreed between the parties, at the time when the contract for the exchange of the lands was made, that the petitioner should send his deed when made to the office of King in the city of New York, and that if he was absent it should be left there with his brother. Before the first of May the petitioner sent the deed to King's office, and he being absent, it was delivered to his brother who was there, and the latter, before the first of May, delivered it to King, who sent it to his legal counsel for

examination. The deed remained in the hands of King and his counsel until the 7th day of November, 1854, when, by King's direction, it was sent back by his counsel to the petitioner, with the statement that King refused to receive it and to perform the contract. In his offers to sell the property, King had stated that his description of it was taken from the deed of the petitioner. The committee found that, if, in the opinion of the court, these facts were equivalent to an acceptance of the deed by King under the agreement, the deed was accepted by him, otherwise that it was not. King did not convey the Old Saybrook property to the petitioner, and soon after the first of May, 1854, became insolvent and removed from the state.

Ward, the other respondent, had attached and levied an execution upon the Old Saybrook property as the property of King, in a suit brought against King on the 23d day of August, 1854, and the same had been set off to him in part satisfaction of his judgment. At the time when he brought the suit he had knowledge that King had made the agreement to convey the property to the petitioner, and that the petitioner was in possession under the agreement and had taken possession soon after the agreement was made. On the 5th of August, 1855, Ward brought an action of ejectment for the premises against a tenant of the petitioner. The bill prayed for an injunction against the prosecution of this action, and for a conveyance from Ward and King, or a decree vesting the title in the petitioner. The suit was brought on the 9th day of November, 1855.

On the trial before the committee the respondents offered evidence that in the month of April, 1854, while King was examining the deed of the petitioner with his counsel, he said to the latter that he declined to receive the deed, but the committee rejected the evidence. The respondents remonstrated against the acceptance of the report; the court overruled the remonstrance, accepted the report and passed a decree in accordance with the prayer of the bill. The respondents thereupon brought the record before this court by a motion in error.

*Dutton*, for the plaintiffs in error, contended that the petitioner had never performed his part of the contract, and that King was therefore absolved from the obligation to perform his part; that the petitioner had no right to insert in his deed a provision that King should assume the $12,000 mortgage debt, the contract providing only that the conveyance should be subject to that mortgage, which did not necessarily imply that King was to pay it; that there had been no express or implied waiver on the part of King of this objection to the deed; that the deed, upon the facts found and in the circumstances, should not be regarded as accepted by King, especially as it was not such a deed as the petitioner was bound under the contract to give; and that the committee improperly rejected the evidence of the declaration of King to his counsel, as to his declining to accept the deed, which declaration should have been received, both as part of the *res gestæ*, and also as showing how the deed came to be left in the hands of his counsel for examination : citing 1 Phill. Ev., 194, 201, 1 Greenl. Ev., § 108, and *Russell* v. *Frisbie*, ℓ9 Conn., 205.

*R. I. Ingersoll* and *Baldwin*, for the defendant in error, contended that the clause inserted in the deed, with regard to the assumption of the mortgage debt by King, was only what the law itself would have implied, from the allowance to King of that amount as a part of the consideration, it being evident from the provision as to the immediate payment of interest on the mortgage by King that the mortgage debt was to be assumed by him; that if it was not so, yet it was the duty of King within a reasonable time to have notified the petitioner of his objection, that he might prepare another deed, and that by retaining the deed so long without such notice, he had waived the objection ; that his retention of the deed, and of the possession of the property, and his offers to sell or rent the property, with a description stated to have been taken from the deed of the petitioner, constituted an acceptance of the deed ; that the deed conveyed a good title to King, and he could have retained the title, and if the

petitioner had no right to impose upon him the payment of the mortgage debt, could by proper notice have repelled the implication that he assented to the stipulation inserted by the grantor, it constituting merely an agreement between himself and the grantor, and not between himself and the mortgagees; that the respondent Ward, having attached with full notice, stood no better than King himself; and that the committee properly rejected the evidence of King's declaration to his counsel as to his declining to accept the deed: citing *Hinsdale* v. *Humphrey*, 15 Conn., 431, and *Parish* v. *Whitney*, 3 Gray, 516.

ELLSWORTH, J. On the 10th day of February, 1854, John King and the petitioner entered into articles of agreement, whereby King covenanted to convey to the petitioner a farm of land, lying in the town of Old Saybrook. As a condition precedent to the conveyance, the petitioner was to convey to King, by a deed with covenants, certain real estate lying in the city of Brooklyn, which was under a mortgage for $12,000 to the Howard Insurance Company; which incumbrance was to be excepted in the covenants. The deed was to be delivered to King, before the first day of May thereafter, at his office in New York, and, in case of his absence, to his brother, as his representative. Each party was to have immediate possession of his purchase, after the date of the articles; and each accordingly took immediate possession. The petitioner delivered his deed, executed by himself and wife, at the place named, within the time stipulated, to the brother of King; and no objection was then made, nor has there been at any time since, to the terms of the deed, except as hereinafter mentioned.

On the 7th day of November following, the attorney of King returned the deed to the petitioner, informing him that King would not accept it, and would not execute a deed of the land in Saybrook. King, and his creditor Ward, who stands in his place, (having no greater rights than King himself, since he attached the land with notice,) now claim that the deed was not such an one as the articles of agreement

required, inasmuch as it provides in terms that King shall pay the mortgage of $12,000, in the place of the petitioner. King insists that on this account he can, even after the expiration of more than six months from the day the deed was delivered, repudiate and reject it.

On the other hand, the petitioner insists that no just objection can be made to the clause referred to, because the duty of King to pay that debt would be implied by law, and that it was well understood by the parties that King should pay it; and at all events, that the objection comes quite too late, inasmuch as the deed must be considered as accepted by King, it having been, as well as the land itself, kept without complaint for so long a time.

We think the case may well be decided for the petitioner on the last mentioned ground, without deciding definitely the other point. It is said however in relation to the first point, that, after the purchase, King was, of course, by implication of law, to provide for the mortgage to the Insurance Company, whenever the company required it to be paid; especially as he had covenanted in the articles to pay interest on that debt, from the time he should come into the receipt of the rents and profits. In *Thompson* v. *Thompson*, 4 Ohio S. R., 333, it is decided " to be a well settled principle, that the purchaser of an incumbered estate, if he agree to take it subject to the incumbrance, and an abatement is made in the price on that account, is bound to indemnify his grantor against the incumbrance, whether he expressly promises to that effect or not, it being implied from the nature of the transaction." To the same effect see *Tweddell* v. *Tweddell*, 2 Brown Cha. 154, *Woods* v. *Huntingford*, 3 Vez. Jr., 128, *Waring* v. *Ward*, 7 id., 337 and *Earl of Oxford* v. *Lady Rodney*, 14 id., 423. This legal inference seems to be proper enough, inasmuch as the property has gone out of the control of the mortgagor, and the incumbrance was itself deducted from the price agreed to be paid.

This clause is now, for the first time, objected to. At the most it was at first a matter of minor importance, and the objection could have been avoided at the time if it had been

made, by a deed in which the clause should be omitted. The deed, as it was, certainly conferred a perfect title on King, which was all, we must think, that he expected or desired from the petitioner. It was not until a long time after the first of May, before which time the error, if it was an error, could have been corrected, and when King had come under other advisers and influences, that any thing was heard of the deed being in any respect unsatisfactory. Besides, if King intended to repudiate the articles for this cause and refuse to perform on his part, he should have delivered up to the petitioner the possession of the land in Brooklyn, which he has never done or offered to do; but on the other hand, certainly for more than six months, has continued to hold the property under his purchase, advertising to sell it as his own, referring to the very deed in question for boundaries and as a link or part of his title under which he claimed to be the owner. Having the entire ownership, he has done with the property just what any other man would do with his own—altered or changed it according to his wishes, projects or taste. Nor had the petitioner any power to interfere and arrest his proceedings, had he wished to do it. In fact, each of the parties had taken possession of his purchase and was enjoying it without reserve or hesitation. After this, we think it would be unreasonable and unprecedented, to allow the respondents to say that the petitioner's deed, which was delivered, within the time agreed, and kept without objection, was not accepted in fulfillment of the articles of agreement.

The declaration of King, made to his attorney in some interview between them, with regard to the deed, has nothing of the character of *res gestæ*, and was properly rejected as inadmissible testimony.

There is no error in the judgment complained of.

In this opinion the other judges concurred.

Judgment affirmed.