WEBER and others, Executors, vs. ZEIMET and others.

SCHOOL LANDS. *Mortgage—Effect of Conveyance subject to Mortgage.*

1. A mortgage of school lands by one who holds merely a certificate of sale thereof, is cut off by a subsequent sale of the land by the state, for non-payment of interest to a third party, who purchases in good faith for his own benefit.

2. If the mortgagor afterwards acquires the title from such purchaser, *it seems* that the lien of the mortgage does not re-attach.

3. In this case, the mortgagor's certificates of the first sale of the said school land, having been held as a security, when the mortgage was executed, by the person who purchased the land at the re-sale, after forfeiture, and defendants having taken title to the other lands, covered by the mortgage, under a covenant to pay the mortgage debt, they had no equity to have such school land charged with a part of such debt.

4. Where mortgaged lands are conveyed subject to the mortgage, the grantees (and all claiming under them) undertake that the land shall be the primary fund for the payment of such debt; and a subsequent re-conveyance of *a part* of said lands to the mortgagor, does not relieve the remainder from their equal liability for such debt.

5. The fact of such subsequent conveyance to the mortgagor does not give the tract thus conveyed the same place in the order of alienation of the mortgaged premises which it would have had, had it never been conveyed by him, nor does it create an equity in favor of the purchasers of the other tracts, to have that particular tract first applied in payment of the mortgage.

APPEAL from the Circuit Court for *Dane* County.

This case was once before this court on appeal from an order fixing the terms upon which the defendants, *Zeimet, Knapp* and *Brereton*, should be allowed to answer, and set up a defense of usury after default. *Weber v. Zeimet*, unreported. In accord-

ance with the decision of this court, in remanding the cause to the circuit court, an order of reference was had to take testimony and report the order of alienation of the mortgaged premises, the relative value of the premises purchased by each defendant, as compared with the whole, the terms of the deeds under which each defendant claimed, and the amount which each defendant should deposit in accordance with the decision of this court, as a condition of filing the proposed answer. The referee found that lot 12, on section 16, school land, was sold January 27, 1854, to Solomon Rape, who assigned the certificate of sale to A. C. King, the mortgagor mentioned in the complaint. The purchase money not being entirely paid, the land was forfeited for non-payment of interest, and was sold by the state, at a sale of forfeited lands, December 10, 1862, to one J. D. Staring,. King purchased the certificate of sale of Staring, which was duly assigned to him. King then pledged the certificate to the defendant *Nolton*, as security for money owing to *Nolton*. King afterward executed a quit-claim deed of said lot 12 to H. H. Brereton, in March, 1869.

On the 25th of January, 1858, King conveyed the south half of the south-west quarter of section 15, mentioned in the complaint, to Staring, subject to the mortgage then on the same, which mortgage is now in suit in this action. On the 2d of April, 1861, Staring and wife conveyed the last mentioned premises to Mary E. King, who, on the 25th of January, 1869, conveyed to the defendant, *Michael Zeimet.*

On the 2d of January, 1858, the mortgagor, A. C. King, conveyed to one Alpheus King the south-east quarter of the north-west quarter, and the north-east quarter of the south-west quarter of said section 15, subject to the payment of the mortgage then on said premises and now in suit here. On the first of May, 1868, Alpheus King and wife conveyed the said south-east quarter of the north-west quarter of said section 15, to the defendants *Knapp* and *Brereton*, and on the same day Mary E. King executed to the same defendants a deed of the same prem-

JUNE TERM, 1872.          285

Weber and others, Executors, vs. Zeimet and others.

ises.   This last described forty acres is that claimed by the defendants *Knapp* and *Brereton*.

On the first day of May, 1868, Alpheus King and wife conveyed to A. C. King, the north-east quarter of the south-west quarter of said section 15; and on the 25th of January, 1869, A. C. King and wife conveyed the same to the defendant *Michael Zeimet*, who on the 23d of September, 1869, conveyed the same to the defendant *Nolton*, who now claims to own it.

The referee found the entire value of the mortgaged premises described in the complaint to be $6,375, and the value of the premises exclusive of the school land forty, known as lot 12, to be $5,800; that the defendant *Michael Zeimet* should deposit as a condition of answering the sum of $1,667, and the defendants *Knapp* and *Brereton* the sum of $677.12, and that the costs of the reference should be divided between them in the same proportion.   To this report defendants *Zeimet*, *Knapp* and *Brereton* objected, on the ground that lot 12 was properly chargeable with its portion of the mortgage debt, and that the value of the forty acres owned by *Nolton* should be deducted from the mortgage debt, and the other three forty acre tracts should then contribute ratably according to their respective valuations.   The report of the referee being confirmed by order of the circuit court, and the terms upon which defendants should be permitted to answer, being fixed in accordance with said report, defendants appealed.

*Carpenter & Chase*, for appellants.

*S. U. Pinney*, for respondent.

Cole, J.   The order in this case is objected to on two grounds: 1st, it is insisted that lot 12, on section 16, is justly and equitably chargeable with its portion of the mortgage debt; and 2d, that the value of the forty acre tract now owned by the defendant Nolton, should first be deducted from the mortgage debt, and that the other three forties should contribute ratably, according to their respective values only, to the pay-

ment of the remainder of the debt after such deduction is made.

Lot 12, known as the school land forty, was included in the mortgage sought to be foreclosed when executed by Augustus C. King to Peter Weber, Dec. 31, 1855. But at this time the mortgagor, King, only owned the certificate of sale given by the school land commissioners. He had not the title. In Dec., 1862, it appears that this land was forfeited to the state for the non-payment of interest, and was sold by the commissioners at a sale of forfeited school lands, to one J. D. Staring. This forfeiture and sale cut off the lien created by the mortgage. About this there is and can be no controversy. It is claimed by the attorneys of the plaintiff, that by the forfeiture and sale of this school land forty, the lien of the Weber mortgage was defeated as absolutely and completely as though it had been cut off by the foreclosure of a prior mortgage on that portion of the mortgaged premises in an action to which the holder of the Weber mortgage was a party, and this position is undoubtedly sound. Under the statute, this unquestionably was the legal effect of the sale made by the commissioners to Staring in 1862. But it further appears that the mortgagor, King, afterwards purchased the certificate issued by the commissioners to Staring, paying therefor the sum of $200. And in consequence of this re-purchase, it is now claimed by the defendants that the Weber mortgage again attached to and became a lien upon that forty, the same as though it had never been cut off by the forfeiture and sale, and that it should contribute to its payment the same as the other three tracts, which are owned by Ziemet, and by Knapp and Brereton. We fail to understand upon what principle this position can be sustained. There is really no ground for saying that Staring purchased this forty at the school land sale for the benefit of King. It must be assumed that he purchased it for himself, and that he took the land discharged of the mortgage. And this being the case, we suppose King might acquire that interest, whatever it was, without subjecting the property again to the lien of the mortgage. The interest which

he acquired was a new and independent one. At all events, we cannot see how, upon the facts of this case, that the re-purchase by King can be said to have revived any equities in favor of the defendants, who have appealed from the order of the circuit court. For it appears from the evidence that before the conveyances from King and wife to the defendant, Zeimet, the school land certificate had been placed in the hands of Nolton as collateral security for the payment of a mortgage given him by King. And further that by the terms of the conveyances through which these defendants derive title to the lands upon section 15, they were expressly charged with the payment of the mortgage in suit. It seems to us that this is all it is necessary to say in answer to the objection that lot 12 in section 16 was erroneously excluded by the referee when ascertaining the value of the mortgaged premises. Was he right in holding that the northeast quarter of the southeast quarter of section 15, owned by the defendant Nolton should only contribute in the same proportion as the other three forties in that section? This view of the referee as to the liability of that tract is quite as favorable for the appellants as the facts of the case would warrant. For it appears that on January 2, 1858, Augustus C. King deeded to Staring two of those forties subject to the mortgage, and on the same day conveyed to Alpheus King the other two forties subject to the same incumbrance. The two forties conveyed to Staring were afterwards conveyed by him to Mary E. King, and by her conveyed to Zeimet, January 25, 1869. Alpheus King conveyed by warranty deed one forty to the defendants Knapp and Brereton, May 1, 1868., and on the same day conveyed the other forty back to Augustus C. King, who subsequently conveyed it to Zeimet. This tract being the northeast quarter of the southwest quarter, was afterwards conveyed by quit claim by Zeimet and wife to the defendant Nolton, in satisfaction of a mortgage at the time on that tract and other lands.

Now, we suppose the law is well settled that the mortgagor,

Augustus C. King, by thus conveying these lands to Staring and Alpheus King, subject to the mortgage then existing upon them, constituted those lands the primary fund for the payment of the mortgage debt. *Jumel vs. Jumel*, 7 Paige 591; *Hartley vs. Harrison*, 24 N. Y., 170; *Freeman vs. Auld*, 44 N. Y., 50; *Townsend vs. Ward*, 27 Conn., 610. And as this equitable right to resort to the land as the primary fund for the payment of the mortgage debt appeared upon the face of the deeds through which the appellants obtained their titles, they are chargeable with notice of that equitable right, equally as if the deeds to them had in terms disclosed that they were to take the premises subject to the payment of that mortgage. *Jumel vs. Jumel.* The mortgagor in this case conveyed the lands subject to the mortgage, in other words he only conveyed the equity of redemption. In *Thompson vs. Thompson*, 4 Ohio, S. R. 333, the doctrine is said to be well settled " that the purchaser of an incumbered estate, if he agree to take it subject to the incumbrance and an abatement is made in the price on that account, is bound to indemnify his grantor against the incumbrance, whether he expressly promise to do so or not; a promise to that effect being implied from the nature of the transaction," p. 349. And we suppose the fair presumption in the present case is that the amount of the mortgage debt was deducted from the purchase price, with the understanding that the grantees would discharge that debt. The arrangement was only a mode of paying so much of the consideration, and the parties evidently intended to make the land the primary fund for the discharge of the mortgage. It is therefore entirely consistent with equitable principles that it should be so applied. Nor can we see that the mere fact that one forty was afterwards re-conveyed to the mortgagor, in any way changes or affects this original transaction and the liability of the premises to the payment of the mortgage debt. For when he originally conveyed the premises, expressly making them subject to the payment of the mortgage, he is presumed to have abated the amount of the debt

Weber and others, Executors, vs. Zeimet and others.[1]

from the purchase price. What justice or reason is there in saying because he subsequently became possessed of a portion of the mortgaged property, that this portion should be first exhausted in payment of the mortgage debt? It seems to us there is no valid reason for so holding, on the facts of this case. The counsel for the appellants contend because of the subsequent ownership of this forty by the mortgagor, that this tract should be treated in the order of alienation, the same as though it had never been conveyed by him, and that an equity exists in favor of his clients, to have that land first applied in payment of the mortgage. But for the reasons already given we think this is an erroneous view of the rights of the parties. The question in this case is how much the appellants should deposit in court as a condition of filing their answer, setting up usury as a defense to the mortgage being foreclosed. We have not deemed it proper at this stage of the cause to consider the question whether, under the conveyances through which those parties claim title, this defense was available. The law upon that subject was somewhat discussed in one or two of the cases above referred to, and is incidentally noticed in *Thomas vs. Mitchell*, 27 Wis., 414. The finding, however, of the referee that the four forties on section 15 are bound to ratably contribute to the mortgage debt according to their relative values, is quite as favorable to the appellants as the facts will warrant. Nor is there any reason shown for deducting the costs of this court on the former appeal from the amount to be deposited.

We are of the opinion that the order appealed from is correct and should be affirmed.

*By the Court.*—It is so ordered.