## TOLEDO TRUST CO v MOYER et

Ohio Appeals, 6th Dist, Lucas Co

Decided March 1, 1937

Fraser, Effler, Shumaker & Winn, Toledo, George A. Bassett, Toledo, and Frank Foster, Toledo, for appellee William A. Lay.

Gorman, Kirkley & O'Brien, Toledo, and William H. McLellan, Toledo, for appellant Lucille Metcalf.

### OPINION

By LLOYD, J.

The above captioned action was commenced in the Court of Common Pleas on October 31, 1931, by The Toledo Trust Company against Lucille Metcalf and others to recover a judgment on a note of Lucille Metcalf for $10,000 dated October 17, 1925, and payable in three years thereafter and which, by payments thereon, had been reduced at the time of the filing of the petition to $8843.13 with interest thereon at 8 per cent per annum from October 13, 1930, and to foreclose the mortgage securing the same.

March 23, 1928, Lucille Metcalf entered into a written contract with William A. Lay, signed by each of them personally, for the sale to him of the mortgaged real estate at an agreed purchase price of $19,000 cash "when warranty deed is furnished, together with opinion of title showing said property clear and free from material de-

fect and incumbrances, but subject to taxes and assessments due and payable after the June, 1928, payment." The contract recites the receipt of $250 from Lay "on account of the purchase" and that the owner shall pay to the Hugh J. Bartley Company a commission of $770. On April 18, 1928, Lucille Metcalf conveyed the real estate to Lay by warranty deed wherein it was covenanted that "the title so conveyed is clear, free and unencumbered and that she will warrant and defend the same against all claims whatsoever. Except taxes and assessments due and payable in December, 1928, and thereafter, excepting also a certain mortgage given to The Toledo Trust Company on October 7, 1925, on which there is due as of date $10,018.33."

On August 31, 1928, Lay sold and conveyed the real estate to Maurice Moyer, who expressly covenanted to assume and pay the taxes and assessments thereon and The Toledo Trust Company mortgage as a part of the purchase price thereof. On August 5, 1936, Metcalf filed a cross-petition against Lay and Maurice Moyer averring substantially that she conveyed the premises to Lay subject to the mortgage held by the trust company and that the consideration for the deed was the deduction by Lay from the agreed purchase price of the premises the amount of the mortgage indebtedness and the payment of the balance in cash to her, and averring that he had assumed the payment of the mortgage. She averred that he thereafter conveyed the premises to Maurice Moyer and that by the express terms of the deed Moyer assumed and agreed to pay the taxes and mortgage indebtedness and that neither he nor Lay had made such payment. She further says that she was damaged thereby in the amount of $8,843.13, and she prayed that in the event a deficiency judgment should be rendered against her she might have a judgment for a like amount against William A. Lay and Maurice Moyer and that the court would decree that they save her harmless from the payment of the deficiency judgment or any part thereof, and be compelled to exhaust their resources before she should be called upon to make payment, and for further relief.

On the issues thus made by the pleadings, trial was had in the Court of Common Pleas, resulting in a finding and judgment in favor of Lay and a default judgment in favor of Metcalf against Moyer. The judgment for Lay was reversed by this court and the cause remanded to the Court of Common Pleas for a new trial. The grounds of the reversal were that the trial court erred to the prejudice of Metcalf in rejecting as evidence the written contract of March 23, 1928, and in striking from the files her request for separate conclusions of fact and law. Thereafter Metcalf filed an amended and supplemental cross-petition averring therein in substance the facts as to the execution by her of The Toledo Trust Company note and mortgage, the sale by the contract of March 23, 1928, of the mortgaged premises to Lay for $19,000 in cash, the conveyance of the property to him by the deed to which reference is hereinabove made, the deed by Lay on August 31, 1928, to Moyer, the foreclosure proceedings of The Toledo Trust Company, the deficiency judgment against her, a levy upon her "goods, chattels and property" and the payment by her on January 2, 1934, of the judgment with interest in the total sum of $4972.87, for which sum with interest at 6 per cent per annum from January 2, 1934, she prays judgment against Lay.

Upon retrial on July 27, 1936, the Court of Common Pleas found upon the issues joined between the defendants Metcalf and Lay in favor of Lay, and, overruling Metcalf's motion for a new trial, dismissed her amended and supplemental cross-petition and entered judgment against her for costs. From this judgment she appeals to this court on questions of law. Numerous errors are alleged in the assignment of errors, they being those assigned in the motion for a new trial, all of which could well have been included in the allegation that the record contains no evidence to support the findings of the court and its judgment thereon, but on the contrary required the entry as a matter of law of a finding and judgment in her favor against Lay.

Lay claims that by a subsequent oral agreement made by him on March 26, 1928, with a Mr. Miller, salesman of the Hugh J. Bartley Company, a real estate firm that represented Metcalf in the negotiations resulting in the written contract of March 23, 1928, Lay was to purchase only Metcalf's equity in the mortgaged premises, and that the sale was consummated on that basis. Mr. Lay testified that on that date he gave the Hugh J. Bartley Company a check for the $250 mentioned in the agreement of March 23rd, and that between those dates he had a conversation with Miller in effect that he would first have to see "the Fort Meigs Electric" before he went any further as to whether

"they are still interested in the building; that they had in mind to buy this property"; that after he saw the "Fort Meigs people" he told Miller "that this contract could not be carried out; that it was impossible for $19,000 cash; that the property could not be financed and the people was not going to go through the way they had promised; that they could rent cheaper and have a building put on the lot later on." Then Lay testifies that Miller said "Why don't you just buy the equity in the property, which requires only $9,000," and later said that he and Miss Metcalf had arranged with the trust company "that they will carry the mortgage for Miss Metcalf," and that he thereupon said to Miller "If this can be made right in that way, that I am not responsible for the mortgage, I will take the equity," his intention being "not to be held liable for the mortgage; just the equity."

On cross-examination he testified that in July, 1928, he paid the taxes then due on the property and in August, 1928, paid $228.33 interest due on the mortgage and that thereafter he consulted the trust company as to his opportunity to sell the property to Moyer and was told that it was all right. Miss Metcalf never met or had any conversation with Lay concerning the sale to him of the mortgaged premises. The sale and purchase of the property was concluded on April 20, 1928, in the office of Mr. Frank Foster, attorney for Lay; Miller, Bartley and Miss Metcalf being present. Lay was not there. The deed which had theretofore been executed by Metcalf was delivered to Foster and he gave to Mr. Bartley for Miss Metcalf a check of Lay dated April 19, 1928, for $8,600, which sum, plus the $250 theretofore given to Bartley by check of Lay, less deuctions of the amount of the mortgage indebtedness, the taxes due and payable in June, 1928, and other incidental items such as prorated insurance premiums and rentals, equalled the the purchase price of $19,000.

Mr. Foster, in whose office the transaction was completed, testified, as did Lay, that he represented Lay "in the closing of the matter"; Bartley and Miller representing Miss Metcalf. Nothing was said by any one "as to any assumption of the mortgage" nor anything as to the covenants of the deed. He was employed by Lay "to close the deal, to take care of the legal end of it." He testified that he knew the amount of the taxes, the amount owing to the bank and the mortgage indebtedness, and that the stipulated purchase price was $19,000, and that, in computing the amount of the check, he deducted from the purchase price of $19,000 the amount then due on the mortgage indebtedness and certain other items not in dispute. He said "I computed the different amounts myself and there was no disagreement." Bartley's testimony confirmed that of Foster, that the deductions were made and the transaction closed on the basis of the purchase price of the property being $19,000. Miller was not a witness, and there is no evidence that he or anybody had talked to Miss Metcalf concerning any change in the terms of the written contract as to the amount of the purchase price or had communicated to her any information as to a new or different contract than the written contract which she had signed, and nothing was said at the meeting in Foster's office with respect thereto. The evidence clearly and indisputably shows that the sale was concluded on the basis of the purchase price being $19,000 as theretofore agreed; and that, when the "electric people" changed their minds about purchasing the property, Lay's plan went awry and the assistance he had expected from them in financing the purchase price of $19,000 not being forthcoming, it was arranged that he would pay part cash instead of all cash, on the assurance, according to Lay, of Miller that the trust company, whose note and mortgage were due October 7, 1928, would continue to carry the mortgage. The fact is that nobody testifies as to Miller and Metcalf having gone to the bank or as to either of them having any such conversation with any of its officers or employees, except what Lay says Miller told him. Nor is there any evidence that any of the conversations which Lay says he had with Miller were ever communicated to Metcalf. Lay himself says, "I never heard anything from Miss Metcalf." All of the information she had, other than that contained in the contract of March 23, 1928, and in the deed from her to Lay, was what occurred in Foster's office when the deed was delivered to Foster, and the $8600 check was delivered to Bartley. For some reason unexplained, except by the statement of Lay that his agreement with Moyer was for an exchange of properties with mutual assumption of mortgages, Lay protected himself on his purchase price obligation to Metcalf by providing in his deed to Moyer that Moyer assumed the trust company mortgage. Upon these facts, is Metcalf entitled to a judgment against Lay for the

amount of the deficiency judgment which she was compelled to pay?

The answer is found in the first paragraph of the syllabus in **Thompson, Admrx. v Thompson, 4 Oh St 333,** which reads:

"It seems to be a well-settled principle that the purchaser of an incumbered estate, if he agree to take it subject to the incumbrance, and an abatement is made in the price on that account, is bound to indemnify his grantor against the incumbrance, whether he expressly promise to do so or not—a promise to that effect being implied from the nature of the transaction."

This statement of the law is reiterated in **Society of Friends v Haines, 47 Oh St 423,** 25 NE 119, at page 426 of the opinion; and again in **Bates v State ex Fulton, Supt. of Banks, 130 Oh St 133,** 198 NE 34, at page 137 of the opinion, wherein it is stated that:

"She admits further that the only money paid by her at that time was $403.60—the exact difference between the purchase price and the balance then due on the mortgage note. This balance has not been fully paid, and no reason is advanced as to why she should be relieved of her obligation."

This principle is again adverted to in **Whitney v Meister, 5 C. C. (N.S.) 271,** at page 274, **16 C.D. 593.**

In Heid v Vreeland, 30 N. J. Eq. 591, it is held:

"Where the purchaser of land, encumbered by a mortgage, agrees to pay a particular sum as purchase-money, and, on the execution of the contract of purchase the amount of the mortgage is deducted from the consideration, and the land conveyed subject to the mortgage, the purchaser is bound to pay the mortgage debt, whether he agreed to do so by express words or not."

In the case of Tweddel v Tweddel, decided March 13, 1787, 2 Bro. C. C. 101, 108, 29 Eng. Rep. Reprint, 87, at page 88, the Lord Chancellor tersely said:

"This appears to be the common case, where a man buys an equity of redemption. The question is, whether he becomes personally liable to the mortgagee. The buyer takes it subject to the charge; but the debt, as to him, is a real, not a personal debt. His contract with the mortgagor is only that the debt shall not fall upon him; it is a mere contract of indemnity, and he would be bound, without any specific contract, to indemnify him, as long as he can pay the money."

Under the facts presented in the instant case, Lay became an indemnitor of Metcalf, the mortgagor, against loss on the mortgage indebtedness.

As said in Stevenson v Black, 1 N. J. Eq. 338:

"As between the mortgagor and the purchaser of a simple equity of redemption, where the mortgage money constitutes, in fact, a part of the consideration of the purchase; the mortgagor has a right to be indemnified by the purchaser, against all personal liability on the bond."

This doctrine is announced in many cases among which are Woods v Smith, 51 Iowa 156, 50 NW 581; Lamke v Donnelly, 163 Iowa 255, 262, 143 NW 869; Burke v Gummey, 49 Pa. 518; Moore's Appeal, 88 Pa. 450, 32 Am. Rep. 469; Townsend v Ward, 27 Conn. 610; Crowell v Hospital of Saint Barnabas, 27 N. J. Eq. 650; See also annotation in L. R.A. 1917C, 592.

Lay alleges in his answer to the amended answer and cross petition of Metcalf, that at the date of the execution of the trust company mortgage, and when the mortgaged property was purchased by him, its "fair and reasonable market value was $20,000." The evidence positively and conclusively shows that the agreed purchase price of the property in question was $19,000, and that in lieu of the present payment thereof in cash, an abatement thereof was made to the extent of the unpaid mortgage indebtedness and certain other incidental items; that it was mutually so understood and if Lay had any mental reservations with respect thereto, they were not disclosed.

From what has been said, it becomes obvious that the Court of Common Pleas erred to the prejudice of the appellant, Metcalf, in its finding and judgment in favor of Lay, and that the amount of the deficiency judgment paid by Metcalf not being questioned, the only finding and judgment that the evidence warrants is a finding and judgment for Metcalf against Lay.

The judgment of the Court of Common Pleas is therefore reversed and final judgment entered herein for Metcalf, the appellant.

Judgment reversed and final judgment for appellant.

**CARPENTER and OVERMYER, JJ, concur.**