FEDERAL FARM MORTGAGE CORPORATION, Plaintiff and Respondent, vs. LARSON (THÈODORE) and others, Defendants and Respondents: LARSON (H. N.) and others, Defendants and Appellants.

*February 15—March 15, 1938.*

222

*Burr Tarrant* of Whitehall, for the appellants.

*E. S. Jedney* and *Ralph S. Lund,* both of Black River Falls, for the respondent Federal Farm Mortgage Corporation.

For the respondent Federal Land Bank of St. Paul there was a brief by *John Thorpe, Michael A. Schmitt, Robert J. Barry,* and *Donald D. Perry,* all of St. Paul, Minnesota, and oral argument by *Mr. Barry.*

FOWLER, J.   The Farmers & Merchants Bank of Hixton had a $2,000 mortgage on the farm of defendant Theodore Larson.   Another bank, which we will refer to as the Melby Bank, had a second mortgage on the land covered by the Hixton Bank mortgage and other lands.   The Hixton Bank foreclosed its mortgage.   The other bank was a party to the suit, but did not appear.   The foreclosure judgment cut off the lien of its mortgage.   The Hixton Bank was stabilized and its mortgage assigned to the trustees of the segregated trust.   These trustees purchased at the sheriff's sale made pursuant to the foreclosure judgment.   The sale was confirmed and a deed executed to them October 14, 1933.   The

Melby Bank was also stabilized and its mortgage assigned to defendant Olson and others as trustees of its segregated trust.

Theodore Larson attended the sheriff's sale, and there had some talk with the trustees who bid in the property for the Hixton Bank trust, to the effect that the trustees might subsequently sell the land to him, but no agreement was made that they would do so. They were free to sell the land to any one who might desire to purchase it.

The Federal Land Bank of St. Paul and the Land Bank commissioners were organized under acts of congress for the purpose among others of enabling landowners who had lost their land by foreclosure to repurchase, loans were made by them only for the purposes stated in the act, funds were only loaned pursuant to the act, and when loaned for the particular purpose above stated had to be disbursed to pay the purchase price and to free the land from liens and discharge of the landowner's debts as required by the terms of the act and the terms of the loans made.

After the sheriff's foreclosure sale, Larson applied to the Federal Land Bank of St. Paul and the Federal Land Bank commissioner for loans to enable him to buy the land from the Hixton Bank trustees. A loan of $2,000 was granted by the Federal Land Bank, and one of $1,300 by the Land Bank commissioner. On the granting of the loan the Hixton Bank trustees agreed to convey to Larson on the conditions fixed by the terms of these loans, and the funds loaned were disbursed according to the conditions so fixed. They executed a deed to Larson, and its delivery was simultaneous with the disbursement of the loaned funds. They gave a receipt reciting full payment by them from the disburser of the fund of the purchase price of the land conveyed to Larson.

The Federal Farm Mortgage Corporation became the owner of the $1,300 mortgage of the Land Bank commissioner, and on default of payments instituted foreclosure

joining as defendants the Federal Land Bank of St. Paul, the Melby Bank, and Olson and others, the trustees of its segregated trust. Issues were presented and judgment entered as indicated in the statement preceding the opinion.

The Melby Bank and the trustees of the segregated trust claim that the purchase of the land by Larson revived their mortgage and placed its lien ahead of the liens of the plaintiff and the Federal Land Bank mortgages. The court held that Larson's repurchase of the land revived the Melby Bank mortgage, but that the moneys loaned by the mortgagees of the other mortgages in suit were used to purchase the land and as purchase-money mortgages their liens were superior to the lien of the Melby Bank mortgage.

The case of *Weber v. Zeimet,* 30 Wis. 283, rules the case in favor of the respondent. The facts involved in that case were that King held a certificate of sale given by the state on forty acres of school land, but he had not yet procured the title. He mortgaged his interest in the land to Weber, warranting the title. After execution of the mortgage, King failed to pay interest owing the state on the unpaid purchase price and the land commissioners forfeited his interest in the land and sold the land to Staring. Of this the opinion in the cited case states (pp. 286, 287) :

"This forfeiture and sale cut off the lien created by the mortgage. About this there is and can be no controversy. It is claimed by the attorneys of the plaintiff, that by the forfeiture and sale of this school land forty, the lien of the Weber mortgage was defeated as absolutely and completely as though it had been cut off by the foreclosure of a prior mortgage on that portion of the mortgaged premises in an action to which the holder of the Weber mortgage was a party, and this position is undoubtedly sound. Under the statute, this unquestionably was the legal effect of the sale made by the commissioners to Staring in 1862. But it further appears that the mortgagor, King, afterwards purchased the certificate issued by the commissioners to Staring, paying therefor the sum of $200. And in consequence

of this repurchase, it is now claimed by the defendants that the Weber mortgage again attached to and became a lien upon that forty, the same as though it had never been cut off by the forfeiture and sale. . . . We fail to understand upon what principle this position can be sustained. . . . We cannot see how, upon the facts of this case, that the repurchase by King can be said to have revived any equities in favor of the defendants."

The basis of appellants' claim that the lien of the Melby Bank mortgage was revived when Larson took title from the purchaser at the sheriff's sale is the familiar rule that if a grantor who warrants his title has not title when he conveys, but thereafter procures it, the after-acquired title operates to the benefit of the grantee. This rule applies as between a mortgagee and his mortgagor who has not title but warrants that he had. *Spiess v. Neuberg,* 71 Wis. 279, 37 N. W. 417. But the rule should not be applied where, as in the instant case, a mortgagor who has clear title except as to a prior mortgage has expressly excepted that mortgage in his covenant of warranty. The reasoning of the *Weber Case, supra,* excludes such application. Reference to the brief of the appellant on file in that case so shows. It was expressly claimed therein that the warranty covenants of the King mortgage "were still alive." But notwithstanding King did not have title when he executed the mortgage and warranted his title the court refused to apply the rule contended for after the mortgage lien was cut off, although he afterwards acquired title. With greater reason the rule contended for should not be applied where, as here, the covenant of warranty in the mortgage expressly excepts a prior mortgage.

The appellants seek to avoid the effect of the exception of the Hixton Bank mortgage from the covenant of warranty in their mortgage on the ground that the covenant in their mortgage was to defend all claims, and the exception of the Hixton Bank mortgage is contained in the covenant of seizin, and the covenant of warranty followed that of seizin. The

covenants of seizin and warranty are in a single clause. It reads that the mortgagors covenant that "they are . . . seized of a good and perfect title . . . in fee simple, and that the title so conveyed is clear, free and unincumbered except . . . [the Hixton Bank mortgage], and that they will forever warrant and defend the same . . . against all claims whatsoever." The intent expressed by the whole clause clearly is that the mortgagors would warrant and defend against all claims except claims under the mortgage that they had expressly represented as existing at the time their warranty was made the lien of which was manifestly superior to the lien of the mortgage containing their warranty.

The appellants base great reliance on the case of *Home Owners' Loan Corp. v. Guaranty Title Trust Co.* 168 Tenn. 118, 76 S. W. (2d) 109. The lien of a mortgage executed by a landowner which was subsequent to that of a mortgage foreclosed was there held revived when the landowner after the foreclosure sale took a deed from the purchaser at the sale. Were the facts of that case identical with the facts of the instant case, the decision in it would not open the question closed by the decision of this court in the *Weber Case, supra.* But, while the general situation involved in the *Tennessee Case* was similar to the instant situation, a controlling fact and a controlling consideration were different. The covenant of warranty against incumbrances in the *Tennessee Case* did not except the prior mortgage. The decision in that case is based on the inference (p. 111, second column, S. W. Reporter) "That whenever the mortgagor has inserted in his second mortgage covenants of warranty against incumbrances, *without expressly excepting the first mortgage lien,* he will be estopped from disputing the lien of the unsatisfied second mortgage upon reacquiring the title *through foreclosure of the first mortgage.*" The last clause of the above quotation, the supposition (bottom p. 110, top of p. 111, S. W. Reporter) that the landowner acquired title from the

purchaser "directly or indirectly, at or following a foreclosure sale," and the assumption that the landowner's acquisition of title was "in effect a redemption" (bottom column 1, p. 110 S. W. Reporter) all indicate that the court considered that the landowner's acquisition of title and the bidding at the foreclosure sale were so connected as to constitute a single transaction, and that the former followed as a consequence or result of the latter. Here the prior mortgage was expressly excepted in the covenant of warranty in appellants' mortgage, and the purchase by the Hixton Bank trustees was entirely independent of Larson's acquisition of title. The purchase at the sale was made by the holders of the mortgage for their own benefit and in their own interests, not at all for the benefit or in the interest of Larson. They were under no obligation to hold the land for him until he could procure a loan for purchase money. As said in the *Weber Case, supra* (p. 286), so here:

"There is really no ground for saying that Staring [Hixton Bank trustees] purchased . . . [the land involved at the sale] for the benefit of King [Larson]. It must be assumed that he [they] purchased it for himself [themselves], and that he [they] took the land discharged of the mortgage. And this being the case, we suppose King [Larson] might acquire that interest, whatever it was, without subjecting the property again to the lien of the mortgage. The interest which he [they] acquired was a new and independent one."

Upon the authority and reason of the *Weber Case, supra,* we hold that the lien of appellants' mortgage, which was cut off by the foreclosure of the Hixton Bank mortgage, did not revive by Larson's subsequent acquisition of title from the bank's trustees. There was no collusion or any participation of action between those trustees and Larson. Larson did not furnish money for the trustees to pay for the land they bid in. The trustees did not act for or in behalf of Larson in bidding in the land, but solely for themselves. Their pur-

chase therefore did not operate as a redemption by Larson. Unless it expressly or circumstantially appears that the bidding in of the property at the foreclosure sale was "in effect a redemption" by the landowner as distinguished from a purchase by the bidder, the lien of a mortgage cut off by the foreclosure judgment is not revived by subsequent acquisition of title by the landowner.

The plaintiff moves for a review of the holding of the trial court that the Melby Bank mortgage was revived by Larson's acquisition of title. This holding was only expressed in the conclusions of law. The judgment of the court contains no reference to revival. There is thus no occasion to modify the judgment. It is entirely correct although partly based on an erroneous conclusion.

*By the Court.*—The judgment of the circuit court is affirmed.